**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell (Bar No. 202091)
sferrell@pacifictrialattorneys.com
David W. Reid, Bar No. 267382
dreid@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile:  (949) 706-6469

Attorneys for Plaintiff

# UNITED STATE DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

SONYA VALENZUELA, individually
and on behalf of all others similarly
situated,

                    Plaintiff,

          v.

THE KROGER CO., an Ohio corporation;
and DOES 1 through 25, inclusive,

                    Defendants.

Case No. 2:22-cv-06382-DMG (AGRx)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

[[Proposed] Order lodged concurrently herewith]

Date:          December 16, 2022
Time:          9:30 p.m.
Courtroom:  8C
Judge:        Hon. Dolly M. Gee

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................... 1

III.  ARGUMENT ................................................................................................ 2

      A.    Subdivision (a) of Section 631 of the California Penal Code Has Four
            Distinct Clauses All of Which Are at Issue................................................ 2

      B.    The First Clause Is Actionable. ................................................................. 3

            1.    The First Clause of Section 631(a) of the California Penal Code
                  Includes the Conduct of Participants to Internet Communications. . 3

                  a.    Unlike the Federal Wiretap Act, the First Clause Provides No
                        Direct Party Exception........................................................... 3

                  b.    *Smith v. LoanMe, Inc.* Provides Important Guidance............. 4

                  c.    Defendant's Reliance on Section 630 of the Penal Code Is
                        Unpersuasive and Ignores the Public Policy Supporting
                        Plaintiff's Interpretation......................................................... 6

                  d.    The Undefined Term "Unauthorized" Within Section 631 Is
                        Intended to Include Lack of Consent by the Consumer. ........ 7

                  e.    Defendant's Analysis of the Definition of "Eavesdropping"
                        Does Not Support Its Analysis of the First Clause, Which
                        Involves Wiretapping as Opposed to Eavesdropping............. 8

                  f.    *Graham v. Noom, Inc.* and *Rogers v. Ulrich* Are Both
                        Unpersuasive........................................................................... 8

      C.    The Complaint Sufficiently Alleges that Plaintiff's Right Under the
            Second Clause Was Violated. ................................................................. 12

            1.    The Complaint Alleges that the Unidentified Third Party Violated
                  the Second Clause. ........................................................................ 12

            2.    The Complaint Plausibly Alleges the "While" "In Transit or
                  Passing Over" Requirement of the Second Clause. ........................ 14

a.     The Plaintiff's Communication Need Not Arrive to the Undisclosed Recipient Before It Arrives to the Intended Recipient. ............................................................... 14

b.     The Other Decisions Cited by Defendant Are Distinguishable. .................................................. 16

D.     The Third and Fourth Clauses Are Actionable. ........................................ 19

E.     If Necessary, Leave to Amend Should Be Granted. ................................. 19

F.     The Court Should Admonish Defendant and Its Counsel for Attempting to Bias the Court with Irrelevant Personal Attacks. ...................................... 20

RESPONSE TO MTN TO DISMISS

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alvarado v. Bratton*,
   2009 WL 10699453 (C.D. Cal. June 1, 2009) ....................................21

*Anderson v. Yates*,
   2011 WL 8006963 (C.D. Cal. Nov. 30, 2011) (Chooljian, Mag. J.)
   (R&R), *adopted in* 2012 WL 2133753 (C.D. Cal. June 11, 2012)
   (Pregerson, J.) .....................................................................20, 21

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................20

*Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*,
   671 F.3d 635 (7th Cir. 2011) (Easterbrook, C.J.) ..............................22

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011) .....................................................21

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ...............................................14

*Camreta v. Greene*,
   563 U.S. 692 (2011)........................................................................9

*Ewing v. Empire Capital Funding Group, Inc.*,
   2019 WL 157660 (S.D. Cal. Jan. 10, 2019) .......................................21

*Garcia v. Hanjin International Corp.*,
   2021 WL 4260408 (C.D. Cal. June 16, 2021) (Gutierrez, J.)...............21

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) (Beeler, Mag. J.)............. 8, 9, 13, 14

*Henderson v. Peterson*,
   2011 WL 2838169 (N.D. Cal. July 15, 2011) ....................................22

*Holloway v. Full Spectrum Lending*,
   2007 WL 7698843 (C.D. Cal. June 26, 2007) (Carter, J.)...................22

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ............15, 16

*In re Google Assistant Privacy Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................12

*In re Google Inc.*,
  2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....................................................12

*In re Vizio, Inc.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) (Staton, J.)........................ 15, 16, 17, 18

*Javier v. Assurance IQ, LLC*,
  2022 WL 1744107 (9th Cir. May 31, 2022) ....................................................1, 12

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ................................................................ 14, 15, 17

*Kuhmstedt v. Enttech Media Group, LLC*,
  2022 WL 1769126 (C.D. Cal. Apr. 11, 2022) (Wilson, J.) ...............................20

*Lobato v. Gomez*,
  2017 WL 931824 (E.D. Cal. Mar. 8, 2017) ..................................................21, 22

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ...........................................................................20

*Mastel v. Miniclip*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021) ..............................................................16

*Matera v. Google Inc.*,
  2016 WL 200619 (N.D. Cal. Aug. 12, 2016) .....................................................12

*Mireskandari v. Daily Mail*,
  2013 WL 12129559 (C.D. Cal. July 30, 2013) (Morrow, J.) ......................16, 17

*Molski v. Evergreen Dynasty Corp.*,
  521 F.3d 1215 (9th Cir. 2008) (Berzon, J., dissenting from denial of
  rehearing en banc)..............................................................................................22

*Native American Arts, Inc. v. Peter Stone Co., U.S.A., Inc.*,
  222 F. Supp. 3d 643 (N.D. Ill. 2016), *appeal dismissed*, No. 16-4278
  (7th Cir. Oct. 4, 2017)........................................................................................22

*NovelPoster v. Javitch Canfield Group*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ................................................................18

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998) ...............................................................................................5

*Popa v. Harriet Carter Gifts, Inc.*,
    45 F.4th 687 (3d Cir. 2022) .................................................................................3

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
    759 F. Supp. 2d 417 (S.D.N.Y. 2010) ...............................................................19

*Revitch v. New Moosejaw, LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....................................... 13, 14, 19

*Rodriguez v. Google LLC*,
    2021 WL 6621070 (N.D. Cal. Aug. 18, 2021) ...................................................15

*Rodriguez v. Google LLC*,
    2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ................................................18, 19

*Rosenow v. Facebook, Inc.*,
    2020 WL 1984062 (S.D. Cal. Apr. 27, 2020)................................................16, 17

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021) (Aenlle-Rocha, J.)............................13, 19

*Shayler v. 1310 PCH, LLC*,
    51 F.4th 1015 (9th Cir. 2022) ......................................................................22, 23

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004) ...........................................................................15

*United States v. Santiago*,
    46 F.3d 885, 892 (9th Cir.), *cert. denied*, 515 U.S. 1162 (1995) .................20, 21

*United States v. Steiger*,
    318 F.3d 1039 (11th Cir. 2003) ..........................................................................18

*United States v. Szymuszkiewicz*,
    622 F.3d 701 (7th Cir. 2010) ..............................................................................15

*United States v. Young*,
    470 U.S. 1 (1985)................................................................................................21

*Webster v. Fall*,
    266 U.S. 507 (1925) .........................................................................19

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) (Holcomb, J.) ........................ 2, 3, 13, 14

**California Cases**

*Kearney v. Salomon Smith Barney, Inc.*,
    39 Cal. 4th 95 (2006) ......................................................................11

*Nolan v. City of Anaheim*,
    33 Cal. 4th 335 (2004) .....................................................................12

*People v. Conklin*,
    12 Cal. 3d 259, 270 (1974) ..........................................................3, 4, 8

*People v. Jones*,
    30 Cal. App. 3d 852 (1973) .........................................................7, 8, 11

*People v. Superior Court*,
    13 Cal. App. 3d 545 (1970) .................................................................8

*People v. Trieber*,
    28 Cal. 2d 657 (1946) ................................................................7, 8, 11

*Ribas v. Clark*,
    38 Cal. 3d 355 (1985) ............................................................ 7, 11, 12

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894 (1975) ........................................................ *passim*

*Smith v. LoanMe, Inc.*,
    11 Cal. 5th 183 (2021) ............................................................. *passim*

*Stone v. Foster*,
    106 Cal. App. 3d 334 (1980) ...............................................................21

*Wilson v. Murillo*,
    163 Cal. App. 4th 1124 (2008) .........................................................21, 22

**Federal Statutes**

18 U.S.C.
    § 2510 *et seq.* ..................................................................................3

§ 2511 ...................................................................................................3
§ 2511(2)(d) ........................................................................................3
Federal Wiretap Act ................................................................... *passim*

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 .............3, 4

CAFA ....................................................................................................2

Americans with Disabilities Act .........................................................23

Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, 100
    Stat. 1848 ......................................................................................4

**California Statutes**

Penal Code
§ 630 *et seq.* ....................................................................................1
§ 630 ................................................................... 6, 7, 10, 11
§ 631 ............................................................................. *passim*
§ 631(a) ......................................................................... *passim*
§ 632 ...............................................................................11
§ 632.5(a) ..........................................................................6
§ 632.6(a) ..........................................................................6
§ 632.7 ......................................................................4, 5, 11
§ 632.7(a) ........................................................................4, 6
§ 640 ...............................................................................7, 8
California Invasion of Privacy Act ........................................... *passim*
Penal Code pt. 1 Title 15 Chapter 1.5 .................................11

**Federal Rules**

Federal Rule of Civil Procedure
Rule 8(a) ...........................................................................20
Rule 9(b) ...........................................................................20
Rule 12(b)(6) ................................................................1, 20

RESPONSE TO MTN TO DISMISS

**Other Authorities**

California Attorney Guidelines of Civility and Professionalism § 8.)  The
    Attorney Guidelines of Civility and Professionalism are available for
    downloading via the State Bar of California's website at:
    http://www.calbar.ca.gov/Attorneys/Conduct-
    Discipline/Ethics/Attorney-Civility-and-Professionalism (last visited
    Nov. 23, 2022). .................................................................................................20

RESPONSE TO MTN TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

A recent Ninth Circuit opinion compels denial of Defendant's Motion in its entirety.  Defendant's Motion to Dismiss under Rule 12(b)(6) should be denied: just months ago, the Ninth Circuit ruled that the conduct alleged in the Complaint is actionable under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.  See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) (holding that CIPA "applies to internet communications" and that alleged wiretapping and recording at issue therein are prohibited absent "the prior consent of all parties to a communication.").  Here, Plaintiff alleges that her communications took place over the internet and were both intercepted and recorded without her consent.

## II.      FACTUAL BACKGROUND

Plaintiff visited Defendant's Website.  (Doc. No. 1-1; Compl. ¶ 14.)  She had a conversation with Defendant.  (*Id.*)  Without her knowledge, Defendant wiretapped the conversation.  (*Id.*)  Defendant relied upon the "chatbot" technology services of independent, third party providers to secretly intercept in real time, eavesdrop upon, record, and store a transcript of the conversation.  (Compl. ¶¶ 15-18.)

The third party providers use the data from the conversations to harvest valuable data from such conversations for the benefit of their clients like Defendant.  (Compl. ¶ 15.)  That is why Defendant enabled, aided, abetted, conspired with its third party providers for the third party eavesdropping services.  (*Id. ¶¶* 15-18.)

Defendant's actions are not incidental to the act of facilitating e-commerce, nor are they undertaken in the ordinary course of business.  To the contrary, they are contrary to industry norms and legitimate consumer privacy expectations.  (Comp. ¶ 13.)

Defendant did not inform Plaintiff, or any putative class members, that it was secretly wiretapping or recording their communications, or paying third parties to eavesdrop upon them.  (Compl. ¶ 16.)  Defendant did not obtain express or implied

consent to wiretap or allow third parties to eavesdrop on their conversations.  (Compl. ¶¶ 17-18.)

On August 3, 2022, Plaintiff filed her Complaint, (Doc. 1-1), in the California Superior Court alleging one cause of action for violations of CIPA: (1) California Penal Code § 631(a), which generally prohibits electronic wiretapping.

On September 7, 2022, Defendant filed a Notice of Removal of this case under CAFA jurisdiction.

## III.        ARGUMENT

### A.    Subdivision (a) of Section 631 of the California Penal Code Has Four Distinct Clauses All of Which Are at Issue.

Subdivision (a) of section 631 of the California Penal Code provides in relevant part as follows:

"Any person who, by means of any machine, instrument, or contrivance, or in any other manner,

[i] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or

[ii] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or

[iii] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or

[iv] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine . . . ."

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021) (Holcomb, J.) (line breaks and headings of clauses added for ease of reference) (quoting Cal. Penal Code § 631(a)).  Thus, subdivision (a) has four distinct clauses.  All four clauses are at issue here.

**B.     The First Clause Is Actionable.**

    **1.     The First Clause of Section 631(a) of the California Penal Code Includes the Conduct of Participants to Internet Communications.**

Defendant implicitly contends that it could not have violated the first clause of section 631(a) because it was a participant to Plaintiff's communications, (Def.'s Mem. at 6:1-8:13), and "Section 631 does not apply to a party to the communication."  (Def.'s Mem. at 3:15-16.)

Defendant's analysis is unpersuasive for the reasons explained below.

    **a.     Unlike the Federal Wiretap Act, the First Clause Provides No Direct Party Exception.**

Unlike the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, which expressly sets forth a direct party exception to liability, *see* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication ***where such person is a party to the communication*** or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.") (emphasis added); *Popa v. Harriet Carter Gifts, Inc.*, 45 F.4th 687, 694 (3d Cir. 2022), ***section 631(a) of the Penal Code contains no such direct party exception***.  *See People v. Conklin*, 12 Cal. 3d 259, 270 (1974) (stating that section 2511, which is part of title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 *et seq.*, "allow any person acting under color of law or ***any private individual to intercept a communication where such person is a party to the communication or where one party to a communication has given his consent***, but that section 631(a)

contains an "all-party consent rule," which is "only one of several differences existing between the state Invasion of Privacy Act and title III").  If the California Legislature intended for section 631(a) to duplicate the scope of the Federal Wiretap Act by carving out a direct party exception, then surely the Legislature would have done so by now given that the Federal Wiretap Act has been in existence for many decades (since 1968 or at least since 1986 when the Wiretap Act was amended via the Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, 100 Stat. 1848, to include electronic communications, stored electronic communications, and stored wire communications).

Indeed, it is highly significant that section 631 of the Penal Code includes the following clause as part of the third clause:

> "or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained . . ."

(Cal. Penal Code § 631(a).)  Such language is inconsistent with an exemption for a party to a communication.

### b. *Smith v. LoanMe, Inc.* Provides Important Guidance.

Defendant's analysis omits to mention the recent California Supreme Court decision in *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183 (2021), which provides significant guidance in interpreting section 631 of the California Penal Code despite the fact that the Supreme Court interpreted therein a different statute, *i.e.*, section 632.7 of the Penal Code. Both sections are part of CIPA.

In *Smith*, the Supreme Court held that "section 632.7 applies to parties as well as nonparties," 11 Cal. 5th at 188, despite the language of that statute referring to "intercepts" or "receives," which the Court of Appeal therein (incorrectly) construed as referring to only nonparties.

The Supreme Court began its analysis in *Smith* by holding that under a plain meaning analysis, a broad interpretation of section 632.7 to include parties to a phone call (involving a cellular phone or cordless phone) was the more plausible reading of section 632.7(a).  *Smith*, 11 Cal. 5th at 194.  Notably, the Supreme Court was not persuaded by

the Court of Appeal's conclusion that parties to a call were excluded from section 632.7's scope based on the Court of Appeal's reasoning that "parties to a call normally consent to other participants' 'receipt' of their input," *Smith*, 11 Cal. 5th at 194.

In addition, the Supreme Court analyzed the legislative history of section 632.7. *Id.* at 196-99.  As part of such analysis, the Supreme Court cited with approval *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998), for the proposition that statutory prohibitions "often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed".  *Smith*, 11 Cal. 5th at 198-99.

Finally, the Supreme Court cited its broader interpretation as better promoting the statutory scheme's goal of protecting privacy in communications.  *Smith*, *id.* at 199-200. The Supreme Court noted that public policy is appropriate to consider as part of any statutory interpretation analysis.  *Id.* at 190 ("If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and ***public policy***.") (emphasis added).

Here, subdivision (a) of section 631 of the California Penal Code states in relevant part:

"Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any ***unauthorized*** connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, ***or who willfully and without the consent of all parties to the communication***, or in any unauthorized manner, ***reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication*** while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; ***or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained***, or who aids, agrees with,

employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500) . . . ."

(Cal. Penal Code § 631(a)) (emphasis added).  There is nothing specific in the foregoing statutory language of subdivision (a) that excludes a party to the chat communication at issue from being liable for violating section 631(a).

Notably, there is a noticeable lack of any ***malice*** requirement in subdivision (a), which functions "to describe a class of potential perpetrators that includes parties".  *Smith*, 11 Cal. 5th at 195 (describing the difference in statutory language between sections 632.5(a) and 632.6(a) containing the word "maliciously", on one hand, and section 632.7(a), on the other hand).  That distinction matters here.

      **c.**    **<u>Defendant's Reliance on Section 630 of the Penal Code Is Unpersuasive and Ignores the Public Policy Supporting Plaintiff's Interpretation.</u>**

Although Defendant relies upon a snippet of section 630 of the Penal Code referring to "eavesdropping," to discern the Legislature's intent in enacting CIPA, (Def.'s Mem. at 6:2-4), Defendant conveniently ignores that the broader purpose of section 630 is to more broadly describe the Legislature's intent to protect the right of privacy of Californians.  Section 630 of the Penal Code states in relevant part as follows:

"The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

The Legislature by this chapter intends to protect the right of privacy of the people

of this state."

(Cal. Penal Code § 630.)   Indeed, section 630 sets forth the public policy that favors Plaintiff's interpretation including that:

> "In enacting this statute, the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society." (Pen. Code, § 630.) This philosophy appears to lie at the heart of virtually all the decisions construing the Privacy Act."

*Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985); *see also Smith*, 11 Cal. 5th at 199 (quoting *Ribas*).  Notably, the statute at issue in *Ribas* was section 631.  *Ribas*, 38 Cal. 3d at 359.  Defendant's analysis also fails to address the aforementioned public policy that favors Plaintiff's interpretation.

### d.   The Undefined Term "Unauthorized" Within Section 631 Is Intended to Include Lack of Consent by the Consumer.

Although in *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975), the Court of Appeal noted that the term "unauthorized connection" (within the first clause of section 631) was "vague and nowhere defined," *Rogers*, 52 Cal. App. 3d at 898, *Rogers* failed to recognize that in *People v. Jones*, 30 Cal. App. 3d 852 (1973), the Court of Appeal, in interpreting the then-existing version of section 631 of the Penal Code enacted in 1967, held that the word "unauthorized" before the word "connection" should be interpreted to mean that the "authorization" required for a legal wiretap is the "consent of the subscriber to the telephone."  30 Cal. App. 3d at 854.  If the subscriber to the telephone "did not consent to the tap," *id.*, then the connection is "unauthorized" under the then-applicable section 631 of the Penal Code.  *Jones*, 30 Cal. App. 3d at 854.

In support, the Court of Appeal in *Jones* cited the California Supreme Court's decision in *People v. Trieber*, 28 Cal. 2d 657 (1946), which, in turn, interpreted the then-applicable section 640 of the California Penal Code as holding that "a telephone company cannot authorize others to make a connection to a subscriber's individual station ***without***

*his approval*." *Id.* at 662 (emphasis added). Notably, former section 631 of the Penal Code was derived from former section 640 of the California Penal Code,[1] 30 Cal. App. 3d at 854, the latter of which was construed by the High Court as "prohibiting wire tapping" and "forbids unauthorized interception of private messages," *Trieber*, 28 Cal. 2d at 662.

In addition, as mentioned above, the California Supreme Court has recognized that section 631(a) imposes an "all-party consent rule" unlike the Federal Wiretap Act. *People v. Conklin*, 12 Cal. 3d 259, 270 (1974).

Thus, the undefined term "unauthorized connection" within the first clause of section 631 includes circumstances in which the ***consumer*** has not provided his or her consent to other participants' use of information obtained from a wire communication.

    **e.**    <u>**Defendant's Analysis of the Definition of "Eavesdropping" Does Not Support Its Analysis of the First Clause, Which Involves Wiretapping as Opposed to Eavesdropping.**</u>

Although Defendant contends that it could not "[e]avesdrop on [i]ts [o]wn [c]onversation," (Def.'s Mem. at 6:1), this begs the question what precise behavior is the subject of the ***first clause*** of section 631(a), eavesdropping or wiretapping?

It is beyond dispute that the first clause of section 631(a) prohibits the act of wiretapping. (Cal. Penal Code § 631(a)) ("Any person who . . . intentionally taps, or makes an unauthorized connection . . . ."). Nothing in the first clause indicates that it is intended to address eavesdropping. As such, Defendant's analysis of the definition of eavesdropping is irrelevant to the analysis of the first clause of section 631(a).

    **f.**    <u>***Graham v. Noom, Inc.* and *Rogers v. Ulrich* Are Both Unpersuasive.**</u>

Defendant's reliance upon *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal.

---

[1] Section 631 of the Penal Code was originally enacted in 1967, which was the same year in which the Legislature repealed the predecessor statute, section 640 of the Penal Code. *People v. Superior Court*, 13 Cal. App. 3d 545, 548 (1970).

2021) (Beeler, Mag. J.),[2] for its holding that section 631 of the California Penal Code excludes participants from any liability under that statute, is misplaced. *Graham* relied heavily upon *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975), the latter of which quoted only a portion of the then-applicable version of Penal Code section 631 in footnote 1 of its decision as follows:

> "Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any such wire, line, or cable, or is being sent from, or received at any place within this state; ... is punishable by ... fine and imprisonment .... "

*Rogers*, 52 Cal. App. 3d at 898 n.1.  Notably, *Rogers* omitted the following statutory language that is also contained in subdivision (a):

> "***or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained***, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . . ."

(Cal. Penal Code § 631(a)) (emphasis added).  In other words, *Rogers*'s conclusion that the then-applicable version of section 631 of the Penal Code does not include "participant recording" ignored a crucial portion of the statute as part of its analysis.  This matters because *Rogers* explained that "[a]s to the third [prohibited] method" "of obtaining

---

[2] It is black letter law that federal district court decisions are not even binding on the same judge in a different case.  "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

information being sent over a telephone or telegraph line," "a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received." *Rogers*, 52 Cal. App. 3d at 898. The omitted clause mentioned above demonstrates that even if a participant to a communication does not intercept the message while it "is in transit," the Legislature intended to prohibit the unauthorized use "in any manner" "or for any purpose" "or to communicate in any way" "any information" obtained via such use. Surely, that includes recordings of private communications exchanged via a wire.

Furthermore, although *Rogers* relied upon section 630 of the Penal Code for its "declaration of legislative finding and intent," *Rogers*, 52 Cal. App. 3d at 898-99, *Rogers* erred in its interpretation of section 630. *Rogers* stated that section 630 "speaks of preventing eavesdropping and other invasions of privacy, thus suggesting that participant recording was not meant to be included." *Id.* at 899. As mentioned above, section 630 of the Penal Code states in relevant part as follows:

> "The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

> The Legislature by this chapter intends to protect the right of privacy of the people of this state."

(Cal. Penal Code § 630.) Simply put, *Rogers* overemphasized the reference to "eavesdropping" within section 630. The main gist of section 630 is that "advances in science and technology" had created new opportunities via "new devices and techniques" implicitly a reference to recording devices including tape recorders, by way of example, that "created a serious threat to the free exercise of personal liberties," and that the

Legislature intended to protect "the right of privacy" via the CIPA, *i.e.*, Chapter 1.5 of Title 15 of Part 1 of the Penal Code.  Indeed, as mentioned above, in *Ribas v. Clark*, 38 Cal. 3d 355 (1985), the Supreme Court explained that:

> "In enacting this statute, the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society." (Pen. Code, § 630.) This philosophy appears to lie at the heart of virtually all the decisions construing the Privacy Act."

38 Cal. 3d at 359.  In *Smith*, the Supreme Court characterized the Legislature's intent as reflective of the entire CIPA.  (*Smith*, 11 Cal. 5th at 199) ("In enacting [the Invasion of Privacy Act] . . .") (quoting *Ribas*).

Indeed, if section 630 states the Legislature's intent solely to address third party eavesdropping on private communications in CIPA, then how does one reconcile the Supreme Court decisions in *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 122 (2006) ("it is unlawful under California law for a party to a telephone conversation to record the conversation without the knowledge of all other parties to the conversation"), pertaining to section 632 and *Smith* pertaining to section 632.7.  Notably, section 632 of the Penal Code was enacted in 1967 as part of CIPA.  The Supreme Court has characterized section 632 as "[a] foundational component of [CIPA]".  *Smith*, 11 Cal. 5th at 191.  Needless to say, *Rogers* was decided in 1975, and so it did not have the subsequent guidance provided in *Kearney* and *Smith* addressing the indisputable fact that CIPA provisions are not limited to eavesdropping by third parties.

Finally, as mentioned above, *Rogers* failed to recognize the long history by which the term "unauthorized" had been interpreted to include circumstances in which the consumer has not provided his or her consent to other participants' use of information obtained from a wire communication.  *Jones*, 30 Cal. App. 3d at 854; *Trieber*, 28 Cal. 2d at 662.

Although *Ribas v. Clark*, 38 Cal. 3d 355 (1985), cited *Rogers* for the proposition that "Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties," 38 Cal. 3d at 359, *Ribas* had no occasion to decide the question as to whether section 631 included the conduct of **participants** to wire communications. *Nolan v. City of Anaheim*, 33 Cal. 4th 335, 343 (2004) ("A decision, of course, does not stand for a proposition not considered by the court.").

## C.   The Complaint Sufficiently Alleges that Plaintiff's Right Under the Second Clause Was Violated.

The second clause of section 631(a) prohibits the following conduct: "Any person who, by means of any machine, instrument, or contrivance, or in any other manner," "who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." (Cal. Penal Code § 631(a).)

Defendant does not dispute that the second clause of section 631(a) includes Internet communications. *See Matera v. Google Inc.*, 2016 WL 200619, at *18 (N.D. Cal. Aug. 12, 2016) (holding that the second clause "encompasses email communications, which pass over wires, lines, or cables"); *In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013) ("the Court finds that section 631 of CIPA applies to emails"); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 826 (N.D. Cal. 2020)). Just months ago, the Ninth Circuit ruled that the conduct alleged in the Complaint is actionable under CIPA. *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) (holding that CIPA "applies to internet communications" and that alleged wiretapping and recording at issue therein are prohibited absent "the prior consent of all parties to a communication.").

## 1.   The Complaint Alleges that the Unidentified Third Party Violated the

1        **Second Clause.**

2        Defendant's analysis assumes that the second clause of section 631(a) could not

3   have been violated because Defendant, itself, cannot be a third party eavesdropper who

4   violated such clause.  (Def.'s Mem. at 6:1-8:13.)  However, assuming *arguendo* that

5   Defendant itself cannot be held liable for violating the second clause, Defendant

6   conveniently ignores that it employed an independent, third party eavesdropper who

7   violated such clause.  (Compl. ¶ 15.)  *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520-21

8   (C.D. Cal. 2021) (Aenlle-Rocha, J.), *Yoon*, 54 F. Supp. 3d at 1081, and *Revitch v. New*

9   *Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019), support Plaintiff's

10  position that an independent, third party company violated the second clause as an

11  eavesdropper.  (Compl. ¶ 15.)  *Saleh* explained that "FullStory is a separate legal entity

12  that offers 'software-as-a-service' and not merely a passive device.  Defendants'

13  argument would imply that any third party who surreptitiously recorded a conversation

14  between two parties would not violate § 631(a) so long as it was recording the

15  conversation at the direction and for the benefit of a party.  The text of section 631(a),

16  however, does not contain any such exception . . . ."  *Saleh*, 562 F. Supp. 3d at 520.  In

17  support, *Saleh* cited *Revitch*, the latter of which explained that "it cannot be that anyone

18  who receives a direct signal escapes liability by becoming a party to the communication.

19  Someone who presses up against a door to listen to a conversation is no less an

20  eavesdropper just because the sound waves from the next room reach his ears directly.

21  That person remains a third party, even as a direct recipient of the speaker's

22  communication."  2019 WL 5485330, at *2; *see also Yoon*, 549 F. Supp. 3d at 1081

23  (citing *Revitch*) ("[I]s Quantum Metric a tape recorder held by Lululemon, or is it an

24  eavesdropper standing outside the door?  This is a question of fact for a jury, best

25  answered after discovery into the storage mechanics of Session Replay.").

26      Defendant's reliance upon *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D.

27  Cal. 2021), is misplaced.  Although *Graham* sought to distinguish *Revitch* because the

28  latter decision purportedly involved a fact pattern in which the vendor "used the data

1 itself," *Graham*, 533 F. Supp. 3d at 832, *Revitch* drew no such distinction.  And, *Yoon*
2 was not persuaded by *Graham*.  *Yoon*, 549 F. Supp. 3d at 1081.

3       **2.**    **The Complaint Plausibly Alleges the "While" "In Transit or Passing**
4             **Over" Requirement of the Second Clause.**

5       Defendant challenges the Complaint's allegations of intercepted communications
6 by a third party company "while" "in transit" or "passing over" as conclusory.  (Def.'s
7 Mem. at 8:14-11:25.)  This Court should reject Defendant's argument.  *Campbell v.*
8 *Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("[T]he complaint's allegation
9 that users' messages were intercepted in transit is to be taken as true at this stage of the
10 case.").  Paragraph 29 of the Complaint alleges:

11       "At all relevant times, Defendant willfully, and without the consent of all
12       parties to the communication, caused to be intercepted, read or attempted to be
13       read, logged, and stored, the contents of electronic communications of Plaintiff and
14       Class Members with its Website, while the electronic communications were ***in***
15       ***transit*** over any wire, line or cable, or were being sent from or received at any
16       place within California."

17 (Compl. ¶ 29) (emphasis added).  The Complaint here plausibly alleges the unlawful
18 disclosure of Plaintiff's communications via "chatbot" and "replay" technology to
19 independent, third party companies for "data harvesting purposes."  (Compl. ¶ 15.)

20       **a.**    **The Plaintiff's Communication Need Not Arrive to the**
21             **Undisclosed Recipient Before It Arrives to the Intended**
22             **Recipient.**

23       Contrary to Defendant's assumption, the communication to the undisclosed
24 recipient of the plaintiff's communication need not arrive ***before*** it is received by the
25 intended (disclosed) recipient.  Although Defendant relies upon *Konop v. Hawaiian*
26 *Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (2-1 decision), in support, a careful
27 review of *Konop* indicates that that majority decision endorsed a definition of "intercept"
28 to mean "acquisition ***contemporaneous*** with transmission."  *Id.* at 877-78 (emphasis

added).  Indeed, *Konop* used that phrase three times.  *Id.*  And, in *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004), the Ninth Circuit characterized *Konop* as holding that the Wiretap Act "applies only to 'acquisition contemporaneous with transmission.'"  *Id.* at 1077.  Indeed, in *In re Vizio, Inc.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) (Staton, J.), the Court characterized "the issue" whether "information cannot be 'intercepted' within the meaning of the Wiretap Act if it acquired *simultaneously* with its arrival," as "not squarely presented in the case."  *Id.* at 1226 (emphasis in original).  Defendant expressly cited *In re Vizio, Inc.* in its Memorandum.  (Def.'s Mem. at 11:22-23.)  Thus, Defendant is surely aware that such decision made such characterization of *Konop*.

More recently, the Ninth Circuit held in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021), that:

> "We adopt the First and Seventh Circuits' understanding that ***simultaneous***, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception. . . . [W]e conclude that Facebook is not exempt from liability as a matter of law under the Wiretap Act or CIPA as a party to the communication."

956 F.3d at 608 (emphasis added).[3]  In support, the Ninth Circuit cited with approval *United States v. Szymuszkiewicz*, 622 F.3d 701, 706 (7th Cir. 2010), which concluded that information acquired "within a second of each message's arrival and assembly" satisfies the contemporaneous interception requirement.  *Id.* at 706.  Thus, the Ninth Circuit has expressly held that section 631(a) claims can be predicated upon "simultaneous," unknown duplication of a user's communications to the intended recipient.  *See also Rodriguez v. Google LLC*, 2021 WL 6621070, at *4 (N.D. Cal. Aug. 18, 2021) (indicating that the plaintiffs' first amended complaint had pled the "requisite § 631 simultaneity,"

---

[3]  The plaintiffs alleged they visited third-party websites (*i.e.*, websites other than Facebook), and that Facebook used plug-ins to "replicate[ ] and send [ ] user data to Facebook through a separate, but ***simultaneous***, channel in a manner undetectable by the user."  *Id.* at 596 (emphasis added).

but that the operative complaint no longer pled it); *In re Vizio, Inc.*, 238 F. Supp. 3d at 1226-27.

Defendant's reliance upon *Mastel v. Miniclip*, 549 F. Supp. 3d 1129 (E.D. Cal. 2021), is equally misplaced.  In *Mastel*, the district court stated that "the crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, i.e., ***before*** it reached its intended recipient." *Id.* at 1137 (emphasis added).  In support, *Mastel* cited *Mireskandari v. Daily Mail*, 2013 WL 12129559, at *10 n.44 (C.D. Cal. July 30, 2013) (Morrow, J.), but *Mireskandari* made no determination that the communication at issue must be read by the wrongdoer in violation of the second clause ***before*** it reaches its intended recipient.  *Mireskandari* merely states that, "Plaintiff fails plausibly to plead that NSC intercepted any electronic communication while it was in transit; at most, he alleges the illegal disclosure of data NSC held in storage."  *Mireskandari*, 2013 WL 12129559, at *10 n.44.  In other words, there is nothing in *Mireskandari* that precludes a viable claim under the second clause of section 631(a) for situations involving the ***simultaneous*** receipt of the plaintiff's communications.  Moreover, *Mastel* failed to distinguish, let alone, acknowledge the aforementioned holding in *In re Facebook, Inc. Internet Tracking Litig*.  Thus, *Mastel* is unpersuasive and directly conflicts with *In re Facebook, Inc. Internet Tracking Litig*.

### b.     The Other Decisions Cited by Defendant Are Distinguishable.

Defendant's reliance on *Rosenow v. Facebook, Inc.*, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020), is misplaced because it is distinguishable from the allegations pled herein.  In *Rosenow*, the plaintiff sued Yahoo, Inc. under the federal Wiretap Act alleging that Yahoo "'reviewed the contents of Plaintiff's electronic communications—including emails, messages, and chats' and provided the contents of Plaintiff's communications to [the National Center for Missing and Exploited Children]." *Id.* at *7.  "The Wiretap Act makes it unlawful to 'intentionally intercept[] . . . any wire, oral, or electronic communication' or 'use[]' or 'disclose[]' the contents of any intentionally intercepted

communication." *Id.*  Significantly, the court noted that "[f]or a communication 'to be 'intercepted' in violation of the Wiretap Act, *it must be acquired during transmission, not while it is in electronic storage*.'"  *Id.* (quoting *Konop*, 302 F.3d at 878).  Although the district court held that the plaintiff's "allegation that Yahoo intercepted [plaintiff's] communications during transit are conclusory," 2020 WL 1984062, at *7, because "[plaintiff] fails to allege facts that support an inference that Yahoo 'captured or redirected' the contents of [plaintiff's] communications while in transit," *id.*, the district court encountered a vastly different set of allegations than here.  Notably, it was undisputed therein that Yahoo searched the electronic communications of certain Yahoo accounts, including the plaintiff's account, in response to an internet company's advisement to Yahoo that certain Yahoo accounts were potentially involved in illegal activity involving minors. *Id.* at *2.  As a result of those searches, Yahoo discovered that various account holders who allegedly either bought or should child pornography, compiled a report, and transmitted the report to the National Center for Missing and Exploited Children.  *Id.*  Thus, the plaintiff's allegations strongly indicated that the National Center for Missing and Exploited Children acquired the plaintiff's communications while it was in electronic storage as opposed to during transmission.  In essence, the plaintiff's complaint made a judicial admission, which the district court could not ignore.  In contrast, no such judicial admission exists here.

*Mireskandari v. Mail*, 2013 WL 12129559, at *10 n.44 (C.D. Cal. July 30, 2013) (Morrow, J.), is similarly distinguishable.  Although the plaintiff sued under section 631(a) of the Penal Code, the Court held that "Plaintiff fails to plausibly to plead that [defendant] intercepted any electronic communication while it was in transit; *at most, he alleges the illegal disclosure of data [defendant] held in storage*." *Id.* at *10 & n.44 (emphasis added).  In contrast, the Complaint here plausibly alleges the unlawful disclosure of Plaintiff's communications to an independent, third party company while it was in transit for data harvesting purposes.  (Compl. ¶¶ 15, 29.)

Defendant's reliance on *In re Vizio, Inc.*, 238 F. Supp. 3d at 1227-28, is misplaced

as that decision is distinguishable because the plaintiffs included in their complaint a "rather inscrutable graphic with no textual explanation," which "suggests that [defendant] transmits their data to its Inscape platform *significantly after* the data arrive at their Smart TVs." *Id.* at 1228 (emphasis added).  Thus, the complaint therein made what appeared to be a judicial admission that the plaintiffs' data was held in storage for a significant period of time and was not acquired during transmission contemporaneously.

Defendant's reliance on *NovelPoster v. Javitch Canfield Group*, 140 F. Supp. 3d 938, 953-54 (N.D. Cal. 2014), is equally misplaced.  The district court held, "Though NovelPoster claims that Yancher and Grinberg were never able to access their email accounts due to the defendants' alleged actions, any subsequent reading or forwarding of those emails by the defendants does not constitute an illegal 'interception.'" *Id.* at 953.  That is because "reading emails that have already been received in an email account's inbox does not constitute 'intercept[ion]' under the [federal Wiretap Act]." *Id.* at 952.  In *In re Vizio, Inc.*, the Court characterized *NovelPoster* as a decision involving the collection of emails "that were unquestionably in electronic storage *for a substantial period before the defendants collected them*." 238 F. Supp. 3d at 1226 (emphasis added).  Moreover, the court cited case authority for the proposition that e-mail interception can, in fact, occur if "*some type of automatic routing software is used* (for example, a duplicate of all of an employee's messages are automatically sent to the employee's boss)[.]" *Id.* (emphasis added) (quoting *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003) (citation omitted)).  Needless to say, the Complaint in the instant action alleges that precisely such automatic routing software was used by Defendant to perpetrate their undisclosed eavesdropping scheme.  (Compl. ¶ 15) (alleging the use of "reply" technology created by third party providers who license such technology to Defendant and who receive Plaintiff's communications for data harvesting purposes). Thus, *NovelPoster*, if anything, supports Plaintiff's position.

Defendant's reliance upon *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022), is misplaced.  The allegations in *Rodriguez* are totally

dissimilar to those at issue here.  Notably, the operative complaint in *Rodriguez* alleged that defendant Google uploaded consumers' data to its servers for developers' use (with the consent of consumers), "but that Google also retained a copy for its own use." *Id.* at *2.  The plaintiffs alleged that Google's act of sending a "second copy to itself" was improper.  *Id.*  Significantly, in *Rodriguez*, there was not any allegation of any use of any automatic routing software to an independent, third party, unlike the allegations at issue here.  (Compl. ¶ 15.)  Thus, Defendant's reliance on *Rodriguez* is akin to comparing apples to oranges.

Finally, Defendant's reliance on *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 759 F. Supp. 2d 417 (S.D.N.Y. 2010), is misplaced as that decision did not consider section 631(a) at all nor did it involve a fact pattern involving the alleged use of any automatic routing software.  Thus, *Pure Power Boot Camp* provides no guidance here.  *Webster v. Fall*, 266 U.S. 507, 511 (1925) ( "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

**D.**    **The Third and Fourth Clauses Are Actionable.**

Given that Plaintiff states a claim under both the first and second clauses of section 631(a), Plaintiff similarly states a claim under the third and fourth clauses.  As was the case in *Revitch*, the defendant website merchant "violated section 631 by ***enabling*** [a third party's] wrongdoing." *Revitch*, 2019 WL 5485330, at *2 (emphasis added), *quoted in Saleh*, 562 F. Supp. 3d at 521; *Revitch*, 2019 WL 5485330, at *2 ("it does not follow that parties to communications are immune from section 631 liability.").

Notably, the instant Motion completely ignores addressing Defendant's liability under the third and fourth clauses of section 631(a).  Given that Defendant omitted raising such issue via its initial Memorandum, the Court should disregard any attempt to address such liability for the first time via Defendant's Reply Memorandum.

**E.**    **If Necessary, Leave to Amend Should Be Granted.**

The straightforward and robust allegations in the Complaint should be more than sufficient to withstand the arguments in Defendant's 12(b)(6) Motion.  Nevertheless, if the Court determines that Plaintiff's Complaint is insufficiently pled, Plaintiff requests leave to amend to cure any such deficiencies.[4]  Whenever a district court dismisses a case, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**F.**     **The Court Should Admonish Defendant and Its Counsel for Attempting to Bias the Court with Irrelevant Personal Attacks.**

Defendant's "Introduction" is replete with unprofessional personal attacks against Plaintiff and her counsel.  (Def.'s Mem. at 1:12-2:28.)

"Unless at issue or relevant in a particular proceeding, an attorney should avoid degrading the intelligence, ethics, morals, integrity, or personal behavior of others." (California Attorney Guidelines of Civility and Professionalism § 8.)  The Attorney Guidelines of Civility and Professionalism are available for downloading via the State Bar of California's website at: http://www.calbar.ca.gov/Attorneys/Conduct-Discipline/Ethics/Attorney-Civility-and-Professionalism (last visited Nov. 23, 2022). "Lawyers who appear before this District are expected to comport themselves with civility and professionalism."  *Kuhmstedt v. Enttech Media Group, LLC*, 2022 WL 1769126, at *6 (C.D. Cal. Apr. 11, 2022) (Wilson, J.).

"[A] personal attack on . . . counsel's integrity may constitute misconduct[.]" *Anderson v. Yates*, 2011 WL 8006963, at *26 (C.D. Cal. Nov. 30, 2011) (Chooljian, Mag. J.) (R&R) (quoting *United States v. Santiago*, 46 F.3d 885, 892 (9th Cir.), *cert. denied*,

---

[4] If Defendant's Reply seeks specific details about Plaintiff's communications with Defendant or raises other factual issues, Defendant can take discovery as to such topics. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (stating that Rule 8(a) of Federal Rules of Civil Procedure "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support allegations).  Defendant should not be permitted to apply a heightened pleading standard under Federal Rule of Civil Procedure 9(b).

515 U.S. 1162 (1995)), *adopted in* 2012 WL 2133753 (C.D. Cal. June 11, 2012) (Pregerson, J.); *Alvarado v. Bratton*, 2009 WL 10699453, at *4 (C.D. Cal. June 1, 2009) ("the personal attacks leveled against counsel are inconsistent with the level of professionalism the Court expects of the lawyers who appear before it, and are neither persuasive nor do they advance the interests of the parties"); *Ewing v. Empire Capital Funding Group, Inc.*, 2019 WL 157660, at *3 (S.D. Cal. Jan. 10, 2019) ("A fair and efficient judiciary requires civility and professionalism on the part of litigants. Personal attacks or continued incivility will lead to further sanctions."); *Stone v. Foster*, 106 Cal. App. 3d 334, 355 (1980) ("Personal attacks on the character or motives of the adverse party, his counsel or his witnesses are misconduct.").

Indeed, "the Supreme Court has admonished counsel to refrain from 'unfounded and inflammatory attacks on the opposing advocate.'" *Anderson*, 2011 WL 8006963, at *26 (quoting *United States v. Young*, 470 U.S. 1, 9 (1985)).

The Court should reject Defendant's smear campaign tactics intended to bias the Court. *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) ("The Court is troubled that Defendants have devoted valuable pages in their Opposition to an apparent smear campaign . . . .").

Defendant's reference to other lawsuits filed by Plaintiff or other clients of Plaintiff's counsel is irrelevant to any issues pertinent to deciding the instant Motion. *Garcia v. Hanjin International Corp.*, 2021 WL 4260408, at *2 (C.D. Cal. June 16, 2021) (Gutierrez, J.) ("Plaintiff's litigation history is immaterial to this motion [to dismiss]."); *Wilson v. Murillo*, 163 Cal. App. 4th 1124, 1128 n.3 (2008) ("we emphasize that [Appellant's] litigation history is immaterial to our resolution of this case"). Defendant's reference to other lawsuits constitutes improper character evidence that is prejudicial to Plaintiff, as Defendant and its counsel surely know. *See, e.g.*, *Lobato v. Gomez*, 2017 WL 931824, at *5 (E.D. Cal. Mar. 8, 2017) ("The motion is granted to the extent that the Defendants may attempt to use evidence of prior litigation history solely to show that

[plaintiff] has a character trait of litigiousness."); *Henderson v. Peterson*, 2011 WL 2838169, at *6 (N.D. Cal. July 15, 2011).

There is no prohibition against suing multiple parties in different lawsuits for separate and distinct CIPA violations. *Holloway v. Full Spectrum Lending*, 2007 WL 7698843, at *8 (C.D. Cal. June 26, 2007) (Carter, J.) ("nothing in the [statute] precludes a plaintiff from suing multiple parties that have violated her rights"); *Wilson v. Murillo*, 163 Cal. App. 4th 1124, 1128 n.3 (2008) ("Numerosity alone, however, is insufficient to show that his lawsuits are frivolous or harassing. . . . 'From all that appears, the number of lawsuits [plaintiff] has filed does not reflect that he is a vexatious litigant; rather, it appears to reflect the failure of the defendants to comply with the law.'"); *cf. Molski v. Evergreen Dynasty Corp.*, 521 F.3d 1215, 1220 (9th Cir. 2008) ("[W]hile self-interest surely drives serial access litigation in part, the reason there *can* be so many lawsuits about access to public accommodations is that there are so many violations of the laws that seek to assure access.") (Berzon, J., dissenting from denial of rehearing en banc) (emphasis in original).

"Such is the nature of 'private-attorney-general' provisions:  Congress perceives a wrong but finds it too costly to enforce the law it passes to address that wrong." *Native American Arts, Inc. v. Peter Stone Co., U.S.A., Inc.*, 222 F. Supp. 3d 643, 647 (N.D. Ill. 2016), *appeal dismissed*, No. 16-4278 (7th Cir. Oct. 4, 2017).  "[W]ith damages far outstripping the actual loss, it is not surprising that suits like this are filed; private-attorney-general statutes are meant to encourage this." *Id.*  "The fact that statutes . . . give rise to 'cottage industries' can't be laid at the feet of attorneys who take advantage of them." *Id.*

"The statute is what it is, and judges must implement its rule whether or not they think it wise . . . ." *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011) (Easterbrook, C.J.).

Finally, Defendant's characterization of *Shayler v. 1310 PCH, LLC*, 51 F.4th 1015 (9th Cir. 2022), as a decision criticizing a serial litigant in an case involving the

Americans with Disabilities Act "for using the courts to **extort** businesses," (Def.'s Mem. at 2:3-6), is false, misleading, and reflects a disturbing lack of candor on Defendant's part.  There is nothing in *Shayler* indicating that either the plaintiff in *Shayler* or any other ADA litigant in some other case engaged in the criminal act of **extortion** in suing a public accommodation for an ADA violation.  Indeed, in *Shayler*, the Ninth Circuit affirmed the district court's award of attorneys' fees and costs to the ADA plaintiff, a serial litigant, after the plaintiff prevailed in obtaining summary judgment in his favor.  51 F.4th at 1018-23.  Defendant offers no explanation how or why the Ninth Circuit would affirm such award if the plaintiff therein had committed the criminal act of extortion.  The foregoing demonstrates that Defendant's overheated rhetoric is not to be trusted.

Dated:  November 23, 2022          PACIFIC TRIAL ATTORNEYS, P.C.

By: */s/ Scott J. Ferrell*

Scott J. Ferrell
Attorney for Plaintiff

- 23 -

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2022, I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell