1   PACIFIC TRIAL ATTORNEYS
    A Professional Corporation
2   Scott J. Ferrell, Bar No. 202091
    sferrell@pacifictrialattorneys.com
3   David W. Reid, Bar No. 267382
    dreid@pacifictrialattorneys.com
4   Victoria C. Knowles, Bar No. 277231
    vknowles@pacifictrialattorneys.com
5   4100 Newport Place Drive, Ste. 800
    Newport Beach, CA  92660
6   Tel: (949) 706-6464
    Fax: (949) 706-6469
7
    Attorneys for Plaintiff and Proposed Class
8

9                   UNITED STATES DISTRICT COURT

10           FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12

13  SONYA VALENZUELA, individually and    Case No. 2:22-cv-6382-DMG-AGR
    on behalf of all others similarly situated,
14
            Plaintiff,                       **FIRST AMENDED CLASS ACTION**
15                                           **COMPLAINT FOR VIOLATION OF**
            v.                               **THE CALIFORNIA INVASION OF**
16                                           **PRIVACY ACT ("CIPA")**
    THE KROGER CO., an Ohio corporation;
17  and DOES 1 through 10, inclusive,
18          Defendants.                      Filed: August 3, 2022
                                             Removed: September 7, 2022
19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Defendant The Kroger Co. ("Defendant") secretly enables and allows a third-party spyware company to wiretap and eavesdrop upon the private conversations of everyone who communicates through the chat feature at https://www.kroger.com/ (the "Website").  The spyware company then exploits and monetizes that data by sharing it with other third parties who use the private chat data to bombard the unsuspecting visitor with targeted marketing.

Defendant does this without visitors' informed consent.  As a result, Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*

## JURISDICTION AND VENUE

1.    Plaintiff Sonya Valenzuela ("Plaintiff") does not dispute Defendant's grounds for removal and the propriety of this Court's jurisdiction and venue pursuant to 28 U.S.C. §§ 1332(a), 1441, 1446, and 1453.

## PARTIES

2.    Plaintiff is a resident and citizen of Murrieta, California.  In July 2022 while physically within California, Plaintiff visited Defendant's Website using a smart phone and conducted a brief conversation with an agent of Defendant through the Website's chat feature.  Plaintiff was not advised that the chat was monitored, intercepted, or recorded, nor did she consent thereto.

3.    Defendant, an Ohio corporation, is "one of the world's largest food retailers, with fiscal 2022 sales of $148.3B." *See* https://ir.kroger.com/home/default.aspx (last visited Jul. 6, 2023).  Defendant's brands include Kroger, Ralphs and Food4Less, with hundreds of locations in California alone. Defendant affects commerce within the state of California and with California residents. Defendant also owns, operates, and/or controls the Website, which at relevant times, offered an online "chat" feature for consumers to communicate directly with Defendant through the Website.

4.     The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendant."   The true names and capacities of the Defendants sued herein as Doe Defendants 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a Doe is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

5.     Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants.

## FACTUAL ALLEGATIONS

**A.    Background of CIPA.**

6.     CIPA prohibits both wiretapping and eavesdropping of electronic communications without the consent of all parties to the communication.   "'[T]he right to control the nature and extent of the firsthand dissemination of [one's] statements'" is viewed by the California Supreme Court "as critical to the purposes of Section 631[.]" *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023) (Breyer, J.) (quoting *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985)); *Ribas*, 38 Cal. 3d at 360-61 ("a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device").   "[U]nder Section 631, it has always mattered who is holding the tape recorder[.]" *Javier*, 2023 WL 114225, at *6.

7. Compliance with CIPA is easy, and most website operators comply by conspicuously warning visitors if their conversations are being recorded, intercepted, or eavesdropped upon.[1]

8. Unlike most companies, Defendant *ignores* CIPA. Instead, Defendant enables and allows a third party that has no corporate affiliation with Defendant to eavesdrop on all such conversations. Why? Because, as one industry expert notes, "*Live chat transcripts are the gold mines of customer service. At your fingertips, you have valuable customer insight to make informed business decisions. . . .**When people are chatting, you have direct access to their exact pain points.***"). *See* https://www.ravience.co/post/improve-marketing-roi-live-chat-transcripts (last visited Jul. 6, 2023) (emphasis added).

9. Defendant's actions are not incidental to facilitating e-commerce, nor are they undertaken in the ordinary course of business. To the contrary, as noted above, Defendant's actions violate industry norms and the legitimate, reasonable expectations of consumers.

**B. Defendant Allows Emplifi to Intercept Consumers' Chats During Transmission Through Its "Astute Bot" Chat Service.**

10. To enable eavesdropping, Defendant has allowed a third party, Emplifi, to embed its chat technology code, "Astute Bot" into the chat feature offered on Defendant's Website. Indeed, whenever a consumer chats via Defendant's Website, the chat is routed *through* Emplifi's Astute Bot servers so they may simultaneously collect a transcript of that chat, along with other user data, in real time and save it for later access:

**Figure 1:**

---

[1] https://www.leechtishman.com/insights/blog/the-california-invasion-of-privacy-act-californias-wiretap-act/ ("*[C]ompliance [with CIPA] is not difficult. A business must take certain steps, as part of its privacy program, to ensure that **any time the business is gathering**, either automatically, or **with a chat feature, personal data of a consumer/website visitor**, **that it obtains valid consent consistent with the holdings and determinations of the courts interpreting CIPA** and other applicable Data Privacy laws.*") (last visited Jul 6, 2023) (emphasis added).

**Figure 2:**



11.    The above Figure 2 confirms that the unencrypted chat transcripts are being received and stored by Astute Bot.  The Astute Bot secret code is a type of automatic routing software that automatically acquires and transmits user chat communications to Astute Bot without any active input from either Defendant's employees, agents, or human representatives, or Emplifi's employees, agents, or human representatives.  Astute Bot acquires Website visitors' chat communications by first having its software to route them to Astute Bot's own computer servers that it owns, controls, and maintains.  The secret code enables and allows Astute Bot/ Emplifi to secretly intercept in real time, eavesdrop upon, and store transcripts of consumers' chat communications they *think* they are having with Defendant, even when such conversations may be private and personal.   Defendant neither informs visitors of this conduct nor obtains their consent to these intrusions.

12.    Indeed, Emplifi admits that it receives and records chat transcripts. *See* https://emplifi.io/products/customer-care/self-service-chatbots  ("When agents can see the history of a customer's chatbot interactions, they can step in to resolve the issue

at hand. Our chatbot makes this context immediately available within Emplifi
Agent…. Self-service may be the quickest path, but what if customers need a live
agent? Automated routing lets customers escalate to a live agent or subject matter
expert, and continue the conversation right where it left off.") (last visited Jul. 6, 2023).

13.    Astute Bot even tracks when a user is *typing* their message – meaning that
even if a user opts not to press "enter" to send their chat message, or deletes it, Astute
Bot is still retaining a log of the message typed. The below Figure 3 shows Astute Bot
capturing a message while it was in the process of being typed:

**Figure 3:**

```
▼Request Payload    view source
    ▼ {botAccountServiceId: "DwqhSBXvkIfNezerRLU_8g", conversationId: 63832673, utterance: "How can I "}
        botAccountServiceId: "DwqhSBXvkIfNezerRLU_8g"
        conversationId: 63832673
        utterance: "How can I "
```

14.    The chat prompts users to disclose personally identifying information
("PII") when initiating the chat.  These details are sent in an unencrypted format to
Astute Bot:

**Figure 4:**



FIRST AMENDED CLASS ACTION COMPLAINT

**Figure 5:**

{botAccountServiceId: "DwqhSBXvkIfNezerRLU_8g", conversationId: 63832673,…}
  botAccountServiceId: "DwqhSBXvkIfNezerRLU_8g"
  conversationId: 63832673
  utterance: "wicaw11171@msback.com"

15.    After minimizing the chat, data is logged on the Defendant's servers:

**Figure 6:**

× Headers  Payload  Preview  Response  Initiator  Timing  Cookies
▼ General
Request URL:        https://www.kroger.com/clickstream/v1/events
Request Method:     POST
Status Code:        ● 202
Remote Address:     173.223.202.120:443
Referrer Policy:    strict-origin-when-cross-origin

16.    The data from the request shows the Website has integrated the Google
Global Site Tag and that Defendant receives PII from users:

**Figure 7:**



17.    The Google Global Site Tag is a JavaScript library provided by Google
that acts as a unified tagging system. It helps streamline the implementation of various
Google services, including Google Analytics, Google Ads conversion tracking, and

1    more. This means that the Website can use a single code snippet instead of having to

2    import each Google service individually.

3          18.    One might reasonably wonder why Emplifi would be interested in

4    intercepting and recording the Website chat interactions between Defendant and

5    unsuspecting visitors to Defendant's Website.  As shown below, it all about money.

6          19.    Emplifi admits its software is integrated with social media platforms like

7    Meta/Facebook.  *See*  https://docs.emplifi.io/platform/latest/home/how-to-connect-

8    facebook-insights-publishing-permis (last visited Jul. 6, 2023).  The integration allows

9    various software sub-systems to share data to operate as a unified system.  According to

10    Bloomberg.com, this is all part of Meta's secret "plan to profit from private chats."  As

11    Bloomberg explained, Meta's software integration "can manage customer messages

12    from multiple services on one central dashboard. That's central to Meta's plan to make

13    money off of its two messaging apps, WhatsApp and Messenger." *See*

14    https://www.bloomberg.com/news/articles/2022-02-15/meta-closes-1-billion-kustomer-

15    deal-after-regulatory-review (last visited Jul 6, 2023) (emphasis added).

16          20.    So how does it work?  First, Meta identifies "user interests" by monitoring

17    a collection of "offsite" user activity such as website visits and interactions (including

18    private chat communications between Defendant and visitors) by "integrating" its

19    software with Emplifi's software.   Second, Meta generates revenue by selling

20    advertising space through its subsidiaries' ability to identify those offsite user interests.

21    Third and finally, after the chat transcripts intercepted by Emplifi are provided to Meta

22    through "integration", Meta brands like Facebook and WhatsApp bombard the

23    unsuspecting Website visitors with targeted advertising based upon the user's Website

24    visits and interactions.

25          21.    Through the preceding acts, Meta subsidiaries can freely boast that they

26    can "Transform your support center into a profit generator by bulk messaging specific

27    customer segments based on your unique data…to reengage dissatisfied customers."

28    *See  e.g.,*  https://www.kustomer.com/product/customer-service/ (last visited Jul. 6,

2023).  Indeed, all of the schemers – Defendant, Emplifi, and Meta – all profit from secretly exploiting the chat data through targeted social media advertising because "Targeted advertising allows brands to send different messaging to different consumers based on what the brand knows about the customer. The better a brand can demonstrate that it understands what its customers want and need, the more likely customers respond to advertising and engage with the brand…. Social media targeting helps brands leverage consumers' behavior on the web, search engines, and social media sites to present ads that reflect consumer interests."  *See* https://www.adroll.com/blog/what-is-targeted-advertising#:~:text=Targeted%20advertising%20allows%20brands%20to,and%20engage%20with%20the%20brand (last visited Jul. 66, 2023).

22.    As such, Emplifi does more than merely provide a storage function for Website users' chat communications with Defendant.  It is more than the proverbial "tape-recorder" in the hand of Defendant.  Instead, Emplifi uses its record of Website users' interaction with Defendant's chat feature for data analytics and marketing/advertising to consumers.  Emplifi's exploitation, monetization, use of, and interaction with the data it gathers through the chat feature on Defendant's Website in real time makes it a third-party interceptor and eavesdropper known to and enabled by Defendant under CIPA, rather than a mere extension of Defendant and/or party to the communication with Website visitors.

23.    Given the nature of Defendant's business, visitors may share personal and/or confidential data, in addition to personally identifying information, with Defendant via the Website chat feature.

24.    Defendant did not inform Class members that Defendant was secretly allowing, aiding, and abetting Emplifi to intercept and eavesdrop on the conversations during transmission, or that Emplifi provided data from such transcripts to Meta and similar entities through "integration" of their softwares.

25.    Defendant did not obtain Plaintiff's or the Class members' express or implied consent for the preceding intrusions, nor did Plaintiff or Class members know at the time of the conversations of Defendant's conduct.

## CLASS ALLEGATIONS

26.    Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

**All persons within the state of California who within the statute of limitations period: (1) communicated with Defendant via the chat feature on Defendant's Website; and (2) whose communications were recorded and/or eavesdropped upon without prior consent.**

27.    NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the tens of thousands, if not more. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

28.    COMMONALITY: Common questions of fact and law exist as to all Class Members, and predominate over any questions affecting only individual members of the Class.  Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

     a.  Whether Defendant caused Plaintiff's and the Class's electronic communications with the Website to be recorded, intercepted and/or monitored;

     b.  Whether Defendant violated CIPA based thereon;

     c.  Whether Plaintiff and Class Members are entitled to statutory damages pursuant to Cal. Penal Code § 637.2;

     d.  Whether Plaintiff and Class Members are entitled to punitive damages pursuant to Cal. Civil Code § 3294; and

     e.  Whether Plaintiff and Class Members are entitled to injunctive relief.

29.    <u>TYPICALITY</u>: As a person who visited Defendant's Website and had her electronic communications recorded, intercepted and monitored, Plaintiff is asserting claims that are typical to the Class.

30.    <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of The Class. Plaintiff has retained attorneys experienced in the class action litigation.  All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

31.    <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient.  Even if every Class Member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## FIRST CAUSE OF ACTION

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 631(a)

32.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

33.    "Any person who, by means of any machine, instrument, or contrivance, or in any other manner,… [ii] willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [iii] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [iv] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine . . . ." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080

1  (C.D. Cal. 2021) (Holcomb, J.) (line breaks and headings of clauses added for ease of

2  reference) (quoting Cal. Penal Code § 631(a)).

3     34.   Section 631(a) of the California Penal Code applies to internet

4  communications and thus applies to Plaintiff's and the Class's electronic

5  communications with Defendant's Website.  "Though written in terms of wiretapping,

6  Section 631(a) applies to Internet communications.  It makes liable anyone who 'reads,

7  or attempts to read, or to learn the contents' of a communication 'without the consent of

8  all parties to the communication.'"  *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at

9  *1 (9th Cir. 2022); *Yoon*, 549 F. Supp. 3d at 1080 ("Courts agree … that CIPA § 631

10  applies to communications conducted over the internet.") (citing *Matera v. Google Inc.*,

11  2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016) (Koh, J.) (holding that second

12  clause of section 631(a) "encompasses email communications, which pass over wires,

13  lines, or cables")); *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *21 (N.D. Cal.

14  Sept. 26, 2013) (Koh, J.) ("the Court finds that section 631 of CIPA applies to emails");

15  *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 826 (N.D. Cal. 2020)

16  (Labson Freeman, J.).

17     35.   Emplifi's software embedded on Defendant's Website to record and

18  eavesdrop upon the Class's communications qualifies as a "machine, instrument,

19  contrivance, or … other manner" used to engage in the prohibited conduct alleged

20  herein.  *See In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D.

21  Cal. 2015) (stating that "***it is undeniable that a computer may qualify as a 'machine'***"

22  within the meaning of section 631(a)) (emphasis added), *aff'd in part and rev'd in part*

23  *on other grounds*, 956 F.3d 589 (9th Cir. 2020).

24     36.   At all relevant times, Defendant intentionally caused the internet

25  communication between Plaintiff and Class members with Defendant's Website to be

26  recorded.  Defendant also aided and abetted, agreed with, employed, or conspired with

27  at least one third party to wiretap and/or eavesdrop upon such conversations during

28

transmission and in real time by voluntarily embedding Emplifi's Astute Bot software code on Defendant's Website.

37.     Defendant knows that Emplifi, through software, captures the electronic communications of visitors to Defendant's Website, and pays it to conduct these activities.

38.     Plaintiff and Class members did not expressly or impliedly consent to any of Defendant's or Emplifi's actions.

39.     In a materially identical case, a court recently held that the above-described allegations state viable claims for violations of section 631(a) of CIPA. *See Byars v. The Goodyear Tire & Rubber Co.*, No. 5:22-cv-01358-SSS-KKx, 2023 WL 1788553, at *4 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) ("*Byars contends that Goodyear, using a third-party service, "intercepts in real time" a website visitors' chat conversation. . . . Byars alleges that, using the chat conversation, website visitors share sensitive personal information. . . . Because Byars has pled sufficient facts to show the contents of the communications and that the communications were intercepted, Byars has sufficiently stated a claim under § 631(a).*") (emphasis added).

40.     Defendant's conduct constitutes numerous discrete violations of Cal. Penal Code § 631(a), entitling Plaintiff and/or Class members to injunctive relief and statutory damages.

## SECOND CAUSE OF ACTION

### Violations of the California Invasion of Privacy Act

### Cal. Penal Code § 632.7

41.     Section 632.7 of California's Penal Code imposes liability upon anyone "who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio

telephone." As summarized by the California Supreme Court, under section 632.7(a) it is a crime when a person intercepts or records "a communication transmitted between a cellular or cordless telephone and another telephone." *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 187 (2021). Stated differently, only one party to the conversation needs to be using a cellular phone for the prohibitions of section 632.7 to apply.

42. Section 632.7(d)(3) defines "Communication" exceptionally broadly – including not only voice communication, but also communications transmitted by "data, or image, including facsimile." Text messages sent from a smart phone to a computer or internet, like the messages at issue here, are considered data transmissions via cellular telephony to landline telephony, thus subject to Section 632.7. *See* https://www.techtarget.com/searchmobilecomputing/definition/texting ("Text messaging is the act of sending short, alphanumeric communications between cellphones, pagers or other hand-held devices, as implemented by a wireless carrier. . . ***Users can also send text messages from a computer to a hand-held device. Web texting, as it's called, is made possible by websites called SMS gateways***.") (last visited Mar. 6, 2023) (emphasis added).

43. Courts have applied section 632.7 to materially identical fact patterns. *See Byars v. The Goodyear Tire & Rubber Co.*, No. 5:22-cv-01358-SSS-KKx, 2023 WL 1788553, *5 (C.D. Cal. Feb. 3, 2023) (Sykes, J.) ("Byars accessed Goodyear's website using her smartphone. As smartphones are cellular phones with web capabilities, Byars' smartphone falls within the cellular phone category…Byars has sufficiently alleged that website users had a reasonable expectation of privacy and therefore the communications fall within the scope of § 632.7.") (emphasis added).

44. Plaintiff communicated with Defendant using telephony subject to the mandates and prohibitions of section 632.7.

45. As set forth above, Defendant recorded telephony communication without the consent of all parties to the communication in violation of section 632.7. Defendant also aided and abetted a third party in the interception, reception, and/or intentional

recordation of in violation of section 632.7, entitling Plaintiff to injunctive relief and statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class counsel;

2. An order declaring Defendant's conduct violates CIPA;

3. An order of judgment in favor of Plaintiff and the Class and against Defendant on the causes of action asserted herein;

4. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

5. Statutory damages pursuant to CIPA;

6. Punitive damages;

7. Prejudgment interest;

8. Reasonable attorneys' fees and costs; and

9. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

Dated:  July 10, 2023              PACIFIC TRIAL ATTORNEYS, APC

By:_____
Scott. J. Ferrell
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2023, I electronically filed the foregoing **FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA")** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.


      */s/ Scott J. Ferrell*
      Scott J. Ferrell