DAVIS WRIGHT TREMAINE LLP
  Jacob M. Harper (SBN 259463)
  *jacobharper@dwt.com*
  James H. Moon (SBN 268215)
  *jamesmoon@dwt.com*
  Sancho Accorsi (SBN 329413)
  *sanchoaccorsi@dwt.com*
865 South Figueroa Street, 24th Floor
Los Angeles, CA 90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

*Attorneys for Defendant*
*The Kroger Co.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONYA VALENZUELA individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>THE KROGER CO., an Ohio Corporation; and DOES 1 through 25, inclusive,<br><br>          Defendants. | Case No. 2:22-cv-6382-DMG-AGR<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[***Request for Judicial Notice, Declaration of Jacob M. Harper, and Proposed Order Filed Concurrently***]<br><br>Date:      October 27, 2023<br>Time:     9:30 a.m.<br>Dept.:     8C<br><br>Action Filed: August 3, 2022 |

MOTION TO DISMISS FIRST AMENDED COMPLAINT

## <u>NOTICE OF MOTION</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 27, 2023, at 9:30 a.m., in Courtroom 8C of the above-captioned Court, located at the United States Courthouse, 350 West 1st Street, Los Angeles, California, 90012, defendant The Kroger Co. will and hereby does move the Court for an order dismissing with prejudice the First Amended Complaint of plaintiff Sonya Valenzuela pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is made on the grounds that Ms. Valenzuela's amended claims for violation of the California Invasion of Privacy Act (CIPA) under California Penal Code sections 631 and 632.7 still fail as a matter of law. Ms. Valenzuela's amended claims cannot escape the fact that Section 631 is a decades-old wiretapping statute inapplicable to the voluntary online webchat conversations Plaintiff initiated with Kroger, as alleged here. Ms. Valenzuela implausibly alleges Kroger pays its software vendor to use Kroger's own customer information, and in any event fails to allege the software vendor functions as anything more than an extension of Kroger. Ms. Valenzuela's claim under Section 632.7 likewise fails because it only applies to conversations between two telephones, and not the online webchats alleged here. No further amendment will change that fact. The Court should therefore dismiss both claims with prejudice.

This motion is based on this notice; the concurrently filed memorandum, request for judicial notice, and declaration; all pleadings, records, and files in this action; and such evidence and argument as may be presented at or before the hearing on this motion.

/ / /

/ / /

/ / /

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1         This motion is made following the conference of counsel pursuant to L.R. 7-3,

2    which took place on September 7, 2022.

3

4     Dated:  July 31, 2023               DAVIS WRIGHT TREMAINE LLP

5                               By: */s/ Jacob M. Harper*

6                                 Jacob M. Harper

7                           *Attorneys for Defendant The Kroger Co.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................1

II.    FACTUAL ALLEGATIONS ................................................................3

III.   STANDARD OF REVIEW ...................................................................5

IV.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE..........6

       A.     Ms. Valenzuela Fails to Allege Kroger Aided and Abetted a
              Violation of Section 631. ..........................................................6

              1.     Ms. Valenzuela Fails to Allege an Underlying Violation. .........7

                     a.     Ms. Valenzuela Did Not Use a Telephone Line
                            (Clause 1)........................................................7

                     b.     Ms. Valenzuela's Messages Were Not Intercepted
                            in Transit and Ms. Valenzuela Consented to Any
                            Recording (Clause 2)......................................8

                     c.     Ms. Valenzuela Does Not Allege a Predicate
                            Violation (Clause 3). .....................................13

              2.     Ms. Valenzuela Alleges Emplifi Is an Extension of
                     Kroger, Precluding Derivative Liability..................................13

              3.     Ms. Valenzuela Fails to Allege the Requisite Knowledge
                     or Intent. ...................................................................18

       B.     Ms. Valenzuela Fails to State a Claim Under Section 632.7.............20

              1.     Section 632.7 Does Not Apply to Online Chats......................21

              2.     Ms. Valenzuela Consented to Any Recording.........................22

              3.     Kroger Cannot Be Liable for Aiding and Abetting Under
                     Section 632.7. .........................................................23

V.     CONCLUSION .................................................................24

MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ..................................................... 10

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................ 5, 6

*Austin B. v. Escondido Union Sch. Dist.*,
 149 Cal. App. 4th 860 (2007) .............................................................................. 20

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ........................................................................................ 5, 6

*Byars v. Goodyear Tire & Rubber Co.*,
 2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) ............................................... 21, 22

*Byars v. Hot Topic, Inc.*,
 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ................................... 1, 5, 15, 21

*Cahill v. Liberty Mut. Ins. Co.*,
 80 F.3d 336 (9th Cir. 1996) ................................................................................. 6

*Cline v. Reetz-Laiolo*,
 329 F. Supp. 3d 1000 (N.D. Cal. 2018) ............................................................... 8

*Cody v. Boscov's, Inc.*,
 2023 WL 2338302 (C.D. Cal. Mar. 2, 2022) ..................................... 1, 7, 13, 15

*Crowley v. CyberSource Corp.*,
 166 F. Supp. 2d 1263 (N.D. Cal. 2001) ............................................................. 10

*Esparza v. Lenox Corp.*,
 2023 WL 2541352 (N.D. Cal. Mar. 16, 2023) ..................................................... 1

*Garcia v. Build.com, Inc.*,
 2023 WL 4535531 (S.D. Cal. July 13, 2023) ............................... 1, 2, 14, 21, 22

*Graham v. Noom, Inc.*,
 533 F. Supp. 3d 823 (N.D. Cal. 2021) ............................................................... 14

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*In re Google Assistant Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................................. 8

*In re Michael T.*,
   84 Cal. App. 3d 907 (1978) ................................................................................ 19

*In re Vizio, Inc. Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................... 9

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ......................................................................... 9, 10

*Licea v. Am. Eagle Outfitters, Inc.*,
   2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) ............................................. *passim*

*Licea v. Caraway Home Inc.*,
   2023 WL 1999496 (C.D. Cal. Feb. 9, 2023) ........................................................ 5

*Licea v. Cinmar, LLC*,
   2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) ............................................. *passim*

*Licea v. Old Navy, LLC*,
   2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) .................................................... 21

*Licea v. Vitacost.com*,
   3:22-cv-01854 (S.D. Cal. July 24, 2023) ................................................... *passim*

*Martin v. Sephora USA, Inc.*,
   2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ........................................... *passim*

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021) .................................................. 7, 13, 22

*Moledina v. Marriott Int'l, Inc.*,
   2022 WL 16630276 (C.D. Cal. Oct. 17, 2022) .................................................. 21

*Montantes v. Inventure Foods*,
   2014 WL 3305578 (C.D. Cal. July 2, 2014) ......................................... 11, 12, 21

*Mortensen v. Bresnan Commc'n, LLC*,
   2010 WL 5140454 (D. Mont. Dec. 13, 2010) ................................................... 12

*Novelposter v. Javitch Canfield Group*,
   140 F. Supp. 3d 938 (N.D. Cal. 2014) ............................................................... 10

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*People v. McCoy*,
    25 Cal. 4th 1111 (2001) ..................................................................................... 18

*People v. Mendoza*,
    18 Cal. 4th 1114 (1998) ..................................................................................... 18

*People v. Perez*,
    35 Cal. 4th 1219 (2005) ....................................................................................... 7

*Reyes v. Educ. Credit Mgmt. Corp.*,
    773 F. App'x 989 (9th Cir. 2019) ..................................................................... 11

*Rodgers v. Hedgpeth*,
    320 F. App'x 815 (9th Cir. 2009) ................................................................ 18, 19

*Rodriguez v. Google, LLC*,
    2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ...................................................... 9

*Rosenow v. Facebook, Inc.*,
    2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) .................................................... 9

*Smith v. LoanMe, Inc.*,
    11 Cal. 5th 183 (2021) ............................................................... 11, 12, 21, 22

*So v. Bay Area Rapid Transit*,
    2013 WL 5663207 (N.D. Cal. Oct. 17, 2013) ............................................ 19, 20

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) .............................................................................. 6

*Tavernetti v. Super. Ct.*,
    22 Cal. 3d 187 (1978) ....................................................................................... 13

*United States v. Staves*,
    383 F.3d 977 (9th Cir. 2004) ............................................................................ 11

*United States v. Vasquez-Chan*,
    978 F.2d 546 (9th Cir. 1992) ............................................................................ 20

*Valenzuela v. Keurig Green Mountain, Inc.*,
    2023 WL 3707181 (N.D. Cal. May 24, 2023) ................................... 2, 3, 17, 21

*Warden v. Kahn*,
    99 Cal. App. 3d 805 (1979) .............................................................................. 23

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Williams v. What If Holdings, LLC*,
    2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .................................................. 14

**Statutes**

18 U.S.C. § 2511 ........................................................................................... 8, 9, 10

Cal. Penal Code
    § 630 ........................................................................................................... 1, 4
    § 631 ............................................................................................................ *passim*
    § 632.7 ......................................................................................................... *passim*

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

MOTION TO DISMISS FIRST AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Sonya Valenzuela and her enterprising counsel, Scott Ferrell, sued dozens of website owners for offering convenient customer service through a webchat feature.  They hoped to, and still do, fit webchat technology into California's telephone wiretap statutes from the 1950s and thereby capitalize on those narrow statutes' statutory penalties and fees.  Such has been Ms. Valenzuela's current state of employment (as a self-professed "tester") and Mr. Ferrell's latest attempt at a profitable business model.

For the first attempt, she and her counsel initially theorized website owners violated the California Invasion of Privacy Act (CIPA) by "eavesdropping" on their own conversations.  *See* Cal. Penal Code § 631(a).  But a party to a conversation cannot eavesdrop on its own conversation, and indeed this "incoherent" theory has been rebuffed by state and federal courts up and down California, including this Court.  *Licea v. Vitacost.com*, 3:22-cv-01854, at *6 (S.D. Cal. July 24, 2023) (*see* Declaration of Jacob M. Harper (Harper Decl.), Ex. A) (dismissing webchat claims under CIPA §§ 631, 632.7; collecting cases).[1]  Those Court doubted, as this one did, Mr. Ferrell's ability to churn a valid case out from these legally flawed claims.  ECF No. 35, Order Granting Motion to Dismiss (MTD Ord.) at 4 (observing it was "uncertain whether additional allegations could cure the deficiency identified" in the Court's order).

---

[1] *Vitacost.com*, 3:22-cv-01854, at *3–9 (dismissing webchat claims under CIPA §§ 631, 632.7); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *4–6 (S.D. Cal. July 13, 2023) (same); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *6–17 (E.D. Cal. Mar. 30, 2023) (same), *F&R adopted*, 2023 WL 3061957 (Apr. 24, 2023); *Licea v. Cinmar, LLC*, 2023 WL 2415592, at *4–13 (C.D. Cal. Mar. 7, 2023) (same); *Cody v. Boscov's, Inc.*, 2023 WL 2338302, at *2–3 (C.D. Cal. Mar. 2, 2022) (same); *Byars v. Hot Topic, Inc.*, 2023 WL 2026994, at *7–12 (C.D. Cal. Feb. 14, 2023) (same); *Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *4–10 (C.D. Cal. Mar. 7, 2023) (dismissing webchat claims under CIPA § 631); *Esparza v. Lenox Corp.*, 2023 WL 2541352, at *2–3 (N.D. Cal. Mar. 16, 2023) (same).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  Their initial theory in the dustbin, Ms. Valenzuela and her counsel now pivot
2  to allege defendant The Kroger Co. (Kroger) aids and abets its own webchat
3  vendor in illegally recording the very webchats Kroger pays the vendor to
4  facilitate.  Her First Amended Complaint piles up more boilerplate, copy-and-paste
5  allegations, and the first court to face this latest iteration adjudged it equally
6  insufficient.  *See Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 3707181,
7  at *5 (N.D. Cal. May 24, 2023) (dismissing effectively identical amended
8  complaint).  Indeed,  Ms. Valenzuela's new theory remains as incoherent as its
9  predecessor.  As numerous courts have held, CIPA does not impose eavesdropping
10  liability on those acting on behalf of a party to a communication any more than it
11  does on the parties themselves.  *See Vitacost.com*, 3:22-cv-01854, at *7
12  (dismissing webchat aiding and abetting claims; plaintiff alleged "Defendant [was]
13  paying [webchat vendor], as a vendor . . . to obtain and store these
14  communications . . . rather than in furtherance of [vendor's] own independent use
15  of these communications"); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *5
16  (S.D. Cal. July 13, 2023) (same; plaintiff alleged "Defendant employ[ed] a third-
17  party software service as a tool to record its own data"); *Martin v. Sephora USA,
18  Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (same), *F&R adopted*,
19  2023 WL 3061957 (Apr. 24, 2023) (same; "a third-party vendor that is deemed to
20  merely facilitate customer chats as an extension of the company does not trigger
21  derivative liability under § 631(a)"); *Licea v. Cinmar, LLC*, 2023 WL 2415592, at
22  *8 (C.D. Cal. Mar. 7, 2023) (same; "software . . . which intercepts in real time and
23  stores transcripts is more akin to a tape recorder . . . than a friend against the
24  door"); *Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *8 (C.D. Cal.
25  Mar. 7, 2023) (same; "Defendant [was] entitled to the party exemption . . . as
26  Plaintiff fail[ed] to plead that the alleged third-party acted independently from
27  Defendant").
28

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Having failed to address the Court's concerns from its June 23, 2023 Order, Ms. Valenzuela has simply repackaged her previous claims, copied and pasted her also-dismissed *Keurig* complaint, and attempted to sneak past the pleadings with this Court where she has failed elsewhere.  These repackaged claims under Sections 631 and 632.7 should be dismissed with prejudice.

*First*, Ms. Valenzuela fails to overcome the fundamental flaw in her Section 631 claim.  She cannot state a claim against Kroger for aiding and abetting its alleged webchat vendor, Emplifi, because she *still* fails to allege (1) that Emplifi is directly liable for an underlying CIPA violation; (2) that Emplifi operated as anything more than an extension of Kroger—that is, that Kroger does anything more than "record[] and store[] the conversation[s] using licensed technology created by" Emplifi, MTD Ord. at 3; and (3) that Kroger specifically intended to facilitate Emplifi's alleged CIPA violation.  Ms. Valenzuela has now copied and pasted her *Keurig* complaint hoping this Court would rule differently.

*Second*, Ms. Valenzuela's Section 632.7 claim is inapplicable to her online chats.  Section 632.7 applies only to communications between *two telephones*, and Ms. Valenzuela's apparent belief that Kroger's website is a "landline telephone" conflicts with the plain meaning of the statute and common sense—"[Kroger's] website is simply not a 'landline telephone.'"  *Vitacost*, 3:22-cv-01854, at *9.  Ms. Valenzuela's Section 632.7 claim also fails because she impliedly consented to the recording and she alleges no facts even suggesting Kroger had the necessary *mens rea* to aid and abet any Section 632.7 violation.

Given these incurable defects, the Court should dismiss Ms. Valenzuela's latest copy-and-paste claims—this time with prejudice.

## II.    FACTUAL ALLEGATIONS

Visitors to Kroger's website, claims the latest complaint, can quickly and conveniently access customer-service information through Kroger's webchat tool.  ECF No. 36, First Amended Complaint (FAC) ¶¶ 2, 4.  Although she does not

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

allege the contents of her conversation, Ms. Valenzuela claims in July 2022 she visited Kroger's website and, using the chat tool, "conducted a brief conversation with an agent of" Kroger's. *Id.* ¶ 2.  Ms. Valenzuela is a self-professed "tester" who went to Kroger's website intending for her webchat communicates to be recorded.  *See* Harper Decl., Ex. B (*Valenzuela v. BJ's Wholesale Club, Inc.*, 2:22-cv-06378 (C.D. Cal.), First Amended Complaint ¶ 15).  The crux of her FAC is that Kroger's webchat vendor Emplifi—using its Astute Bot software—"intercept[ed] and eavesdrop[ped]" on the customer-service chats it facilitated, and then "provided data from such transcripts to Meta and similar entities through 'integration' of their softwares."  FAC ¶¶ 10, 24.

Ms. Valenzuela filed her initial complaint on August 3, 2022, on behalf of a putative nationwide class alleging this conduct violated Section 631 of the California Invasion of Privacy Act (CIPA), Cal. Penal Code § 630 *et seq.*  ECF No. 1-1.  She and her counsel filed dozens of identical complaints in the subsequent months.  But courts repeatedly found these boilerplate lawsuits implicate no privacy violations—rather they reflect a lawyer-driven effort to contort voluntary online communications into "wiretapping."  Judge Jesus G. Bernal admonished Ms. Valenzuela's counsel for filing these "serial," "copy[] and past[e] . . . boilerplate," and wholly deficient complaints:

> [T]he Court acknowledges the central dynamic in this litigation, underscoring all of the deficiencies in the FAC: Plaintiff, and her counsel, Scott Ferrell, are serial litigants bringing numerous "cookie cutter" lawsuits under CIPA against various businesses that operate websites . . . .

> [W]hen the goal is to file as many lawsuits as possible in the least amount of time, it is far easier and cheaper to copy and paste a complaint over and over again, and to write the original template in such a way that hardly anything needs to be swapped out. . . . [This] raise[s] some fundamental questions, not least: Why is the entire complaint written at such a high level of generality that it could apply word-for-word to the dozens of other businesses this law firm is suing?

MOTION TO DISMISS FIRST AMENDED COMPLAINT

> And surely, whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far. . . .
>
> At the end of the day, *Twombly-Iqbal* pleading standards might be distilled to a single proposition: if a litigant pleads at such a high level of generality that it is possible to copy and paste a complaint word-for-word against a new defendant (at least after the unnumbered "introduction" section, where Plaintiff's Counsel has written the URL of the defendant of the day and referred to it as "the Website" so that he need not make a single other alteration to the rest of the complaint), then almost by definition he is pleading without the factual specificity necessary to state a claim for relief.

*Byars v. Hot Topic, Inc.*, 2023 WL 2026994, at *4–5 (C.D. Cal. Feb. 14, 2023); *see Licea v. Caraway Home Inc.*, 2023 WL 1999496, at *5–6 (C.D. Cal. Feb. 9, 2023) (similar); *Sephora*, 2023 WL 2717636, at *8 n.7 ("Plaintiff's counsel has brought numerous lawsuits under CIPA against various businesses that operate websites and the complaints in these lawsuits are virtually identical. The observation of this fact is not irrelevant to the Court's plausibility analysis.").

Kroger moved to dismiss Ms. Valenzuela's initial complaint on the grounds that Kroger cannot be liable for wiretapping or eavesdropping on its own conversations, ECF No. 14, and on June 23, 2023, the Court granted Kroger's motion and dismissed Ms. Valenzuela's claims, ECF No. 35 (MTD Ord.).

Ms. Valenzuela's FAC attempts to recast Kroger's conduct as "aiding and abetting," but her theory is fundamentally the same as before and still goes nowhere. Her FAC also adds a half-hearted claim under CIPA Section 632.7, which applies only to telephones. Having had the opportunity to replead, Ms. Valenzuela's claims should now be dismissed with prejudice.

## III.    STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, a complaint must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

claim for relief requires "factual content that allows the court to draw the reasonable inference that the defendant is responsible for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. Courts may properly dismiss if the complaint "either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Dismissal should be with prejudice where amendment would be futile in curing a complaint's legal deficiencies. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996).

## IV.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Ms. Valenzuela's new allegations do not save her claims under California Penal Code sections 631 and 632.7, both of which fail as a matter of law.

### A.    Ms. Valenzuela Fails to Allege Kroger Aided and Abetted a Violation of Section 631.

As noted in the Court's order, Section 631(a) prohibits three patterns of conduct: Clause 1 prohibits wiretapping; Clause 2 prohibits eavesdropping; and Clause 3 prohibits using or sharing information obtained in violation of the first two clauses, or aiding and abetting another's violation of the first two clauses. MTD Ord. at 2. Because the Court ruled Kroger cannot be directly liable under Section 631, *id.* at 3, Ms. Valenzuela's Section 631 claim now depends entirely on the theory that Kroger "aids and abets" its webchat vendor, Emplifi, in "eavesdropping" on customer's webchats, *see* FAC ¶ 36. But this theory fails on multiple grounds, each fatal to her claim: (1) Ms. Valenzuela fails to allege Emplifi committed an underlying CIPA violation; (2) her allegations make clear that

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Emplifi, in allegedly recording webchats and providing data analytics to Kroger, operates as an extension of Kroger, bringing the alleged conduct within the party exception; and (3) even if Emplifi was independently liable, Ms. Valenzuela fails to allege, as she must, that Kroger had knowledge Emplifi allegedly intended to violate CIPA, and that Kroger acted with the specific intent to assist Emplifi in those alleged violations.

### 1. Ms. Valenzuela Fails to Allege an Underlying Violation.

"[T]o plead Defendant's liability for aiding and abetting, [a plaintiff] must first adequately plead [a third party's] underlying violations of the statute." *Cody v. Boscov's, Inc.*, 2023 WL 2338302, at *2 (C.D. Cal. Mar. 2, 2022); *People v. Perez*, 35 Cal. 4th 1219, 1225 (2005) ("absent proof of a predicate offense, . . . an aiding and abetting theory cannot be sustained"). Ms. Valenzuela's allegations fail to establish any such underlying third-party violation: (a) Ms. Valenzuela cannot allege Emplifi violated Section 631(a)'s first clause because, as the Court already ruled, it applies only to telephone communications; (b) Emplifi could not have violated Section 631(a)'s second clause because it could not have intercepted Ms. Valenzuela's webchats "in transit" and Ms. Valenzuela impliedly consented to any monitoring or recording; and (c) without stating a violation of the first two clauses Ms. Valenzuela cannot state a claim for a violation of the third.

### a. Ms. Valenzuela Did Not Use a Telephone Line (Clause 1).

The first clause of Section 631(a) is expressly limited to communications over a "telegraph or telephone wire, line, cable, or instrument." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135–36 (E.D. Cal. 2021) (holding plaintiff must "plausibly allege that a defendant intentionally tapped or made an unauthorized connection with a '*telegraph or telephone* wire, line, cable, or instrument' to state a claim under § 631(a)'s first clause").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

But here, Ms. Valenzuela alleges she communicated through the "chat feature" on Kroger's "Website," not a telephone line.  FAC ¶ 22; *see id.* ¶ 10 (alleging Emplifi "embed[s] its chat technology code . . . into the chat feature offered *on Defendant's Website*"); *id.* ¶ 36 (Kroger "caused the internet communication[s]" with its "Website to be recorded").  The Court already dismissed this theory, concluding "the prohibition against intentional wiretapping . . . applies only to telephone communications."  MTD Ord. at 3 n.2 (citing *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020)).  The FAC offers no reason to revisit this sound conclusion uniformly supported by recent decisions.  *See, e.g.*, *Am. Eagle*, 2023 WL 2469630, at *5 (argument that § 631(a)'s first clause applies to internet communications "has been uniformly rejected by numerous courts").

> **b.** **Ms. Valenzuela's Messages Were Not Intercepted in Transit and Ms. Valenzuela Consented to Any Recording (Clause 2).**

***In Transit.***  Section 631(a)'s second clause prohibits eavesdropping, but only "while the same is *in transit*."  Cal. Penal Code § 631(a); *see Cinmar*, 2023 WL 2415592, at *9 ("The second clause of section 631(a) requires that messages be intercepted while in transit.").  "Conclusory allegations" that a defendant or third party "intercepts" or "eavesdrops" without "specific facts as to how or when the interception takes place . . . fall short of stating a plausible claim under section 631(a)."  *Cinmar*, 2023 WL 2415592, at *9 (dismissing on this ground); *see Am. Eagle*, 2023 WL 2469630, at *8–10 (dismissing; "Plaintiffs do not sufficiently allege how the messages were intercepted, and thereby do not provide fair notice to Defendant of their alleged violation"); *Sephora*, 2023 WL 2717636, at *9–11.  Put another way, a defendant must "stop, seize, or interrupt [a communication] in

MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   progress or course before arrival." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d

2   868, 878 (9th Cir. 2002).[2]

3       Although Ms. Valenzuela uses many words and figures to argue Emplifi

4   intercepts webchats "in transit," she offers no facts to plausibly support the

5   inference that Emplifi somehow acquires the webchat communications before

6   Kroger receives them. *See* FAC ¶ 11 (Emplifi "acquires [Kroger's] chat

7   communications by first having its software [] route them to Astute Bot's own

8   computer servers"; "[t]he secret code allows Astute Bot/Emplifi to secretly

9   intercept in real time"). Such vague and conclusory allegations fall short of

10  pleading interception. *See Am. Eagle*, 2023 WL 2469630, at *9 (dismissing;

11  "Plaintiff's bare allegations that 'the third party secretly intercepts (during

12  transmission and in real time)' is conclusory and does not allege specific facts as to

13  how or when the interception takes place, which has been found to fall short of

14  stating a plausible claim under section 631(a)"); *Rosenow v. Facebook, Inc.*, 2020

15  WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (dismissing; "alleg[ations] that

16  'Yahoo knowingly used an algorithm to intercept and scan Plaintiff's incoming

17  chat messages for content during transit and before placing them in electronic

18  storage'" were "conclusory"); *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp.

19  3d 1204, 1228 (C.D. Cal. 2017) (dismissing; "conclusory allegation that Vizio

20  intercepted [plaintiffs'] electronic communications 'during transmission'" was

21  only supported by "vague allegations about how Vizio's data collection occurs in

22  real-time"); *Rodriguez v. Google, LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25,

23  2022) (dismissing; "[u]sing the word 'intercept' repeatedly is simply not enough

24

25

26  [2] "Because the federal Wiretap Act (18 U.S.C. § 2511(1)(a)) also requires
    messages be intercepted while in transit, courts have looked at cases analyzing the
    Wiretap Act," like *Konop*, "as informative of section 631(a)." *Am. Eagle*, 2023
27  WL 2469630, at *8; *see Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D.
    Cal. 2018) ("The analysis for a violation of CIPA is the same as that under the
28  federal Wiretap Act.") (citation omitted).

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  without the addition of specific facts that make it plausible [defendant] is

2  intercepting [plaintiffs'] data in transit").

3       In any event, Ms. Valenzuela's affirmative allegations contradict her

4  unfounded conclusions and instead establish Emplifi could *not* have "intercepted"

5  the webchats.  Emplifi could not obtain the webchats between the time they left the

6  sender (Ms. Valenzuela) and arrived at the recipient (Kroger) because Ms.

7  Valenzuela *typed them into the Kroger webpage*.  *See* FAC ¶ 2 (Ms. Valenzuela

8  intended to communicate "with an agent *of Defendant* through *the Website's chat

9  feature*").  Indeed, Ms. Valenzuela alleges Emplifi's software is "embedded on

10  Defendant's Website."  *Id.* ¶ 35; *see id.* ¶ 10 (Emplifi software embedded "*into* the

11  chat feature offered *on Defendant's website*") & Figure 1 (apparently showing

12  Astute Bot code implemented into Kroger website).  There is no time between

13  when Ms. Valenzuela sent her message and when Kroger received it—she placed it

14  directly into Kroger's hand.

15       Thus, by definition, the moment the message reached Kroger's website, it

16  "arriv[ed]" at its intended recipient—circumstance courts find preclude

17  "interception" and require dismissal.  *See Konop*, 302 F.3d at 877–78 (explaining

18  that once the electronic communication arrives at the recipient, it becomes a

19  "stored" communication and can no longer be "intercepted" "in transmission");

20  *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021)

21  (dismissing; "Plaintiffs sent text messages to [defendant's number], and the device

22  paired with that number 'received the information, effectively completing the

23  communication'") (quoting *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263,

24  1269 (N.D. Cal. 2001)).  Ms. Valenzuela's theory stumbles over an inherent

25  limitation to CIPA claims: Given the speed of modern internet communications,

26  "the Wiretap Act's [or CIPA's] application to . . . electronic communication is

27  undoubtedly limited."  *Novelposter v. Javitch Canfield Group*, 140 F. Supp. 3d

28

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

938, 951 (N.D. Cal. 2014) (dismissing Wiretap Act and § 631(a) claims related to email communications).

Ms. Valenzuela thus does not and cannot state a claim under the second clause of Section 631(a).

**Consent.** Ms. Valenzuela's claim under Section 631(a)'s second clause also fails because she had clear notice of any recording, and thus impliedly consented to it. "[T]he plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record." *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019); *see* Cal. Penal Code § 631(a) (requiring eavesdropping "without . . . consent"). "[C]onsent may be implied where there are surrounding circumstances indicating that the [plaintiff] knowingly agreed to the surveillance." *United States v. Staves*, 383 F.3d 977, 981 (9th Cir. 2004) (citation & internal quotation marks omitted). Written communications, in particular, lead to an inference of implied consent: "The circumstances involved with certain kinds of communications may lead to a reasonable inference that a party sending a communication has consented to having it recorded by the intended recipient— recordation would be expected with a facsimile or text transmission, for example." *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 194 n.4 (2021); *see Montantes v. Inventure Foods*, 2014 WL 3305578, at *3 (C.D. Cal. July 2, 2014) ("A party who has sent a communication such as an image or facsimile that is necessarily recorded upon receipt has certainly consented to that recording by the intended recipient.").

Ms. Valenzuela's theory is untenable. The District Court in the Southern District recently rejected the same theory that Ms. Valenzuela's counsel presented on behalf of another client:

> Such communications are, by their very nature, recorded. It is only by composing and fixing a message, and then by transmitting that recorded message, that communication through a chat feature could occur. Each party to a chat communication necessarily records that party's own message in sending it to the other party. The sender's consent to

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

recording in this manner is self-evident.  And once again, by Plaintiff's standard, Plaintiff himself would equally be "recording" his chat conversation with Defendant.

*Vitacost*, 3:22-cv-01854, at *6.

Likewise, here, Ms. Valenzuela "certainly consented" to her webchats being "recorded" because *she typed out those messages herself.  Montantes*, 2014 WL 3305578, at *3.  Her chat messages are no different than emails, text messages, or other written communications for which "recordation" is a natural consequence of the medium.  *Smith*, 11 Cal. 5th at 194 n.4.

Moreover, Ms. Valenzuela *intended to be recorded*.  She concedes she is a "tester," Harper Decl., Ex B ¶ 15, and indeed the same month she communicated with Kroger—July 2022, FAC ¶ 2—Ms. Valenzuela filed three separate complaints alleging three separate companies recorded her webchats.[3]  This strongly suggests Ms. Valenzuela suspected Kroger would record her communications when she initiated the webchats.

Last, Kroger expressly notified Ms. Valenzuela that it "may share your information with our service providers who provide us support services such as . . . answering your questions."  RJN, Ex. H at 6 (Kroger Privacy Policy July 2022).  Kroger also disclosed that it "use[s] third-party technology to better understand your online behavior," that is, for data analytics purposes.  *Id.*, Ex. H at 4.  Kroger was open that it may record and analyze customer-service communications like the webchats at issue here, so Ms. Valenzuela's choice to initiate a webchat with Kroger indicates she impliedly consented to the recording and monitoring about which she now complains.  *See Mortensen v. Bresnan Commc'n, LLC*, 2010 WL 5140454, at *5 (D. Mont. Dec. 13, 2010) (ISP users

---

[3] *Valenzuela v. AFLAC Inc.*, 2:22-cv-06348 (S.D. Cal.) (filed July 22, 2022); *Valenzuela v. Nationwide Mut. Ins. Co.*, 2:22-cv-06177 (C.D. Cal.) (filed July 26, 2022); *Valenzuela v. Under Armour, Inc.*, 22STCV24206 (L.A. Super. Ct.) (filed July 27, 2022).

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

impliedly consented to ISP diverting internet communication to third-party ad company where ISP's "Privacy Notice . . . [made] evident that Plaintiffs' electronic transmissions would be monitored and would in fact be transferred to third-parties for the purposes of providing 'content or services'").

These three factors combine to show Ms. Valenzuela impliedly consented to the alleged monitoring and recording of her webchat conversations, which, like her inability to allege "in transit" interception, forecloses her claim under Section 631(a)'s second clause.

### c. Ms. Valenzuela Does Not Allege a Predicate Violation (Clause 3).

Last, any allegation Emplifi violated Section 631(a)'s third clause, which prohibits "us[ing] or communicat[ing] information obtained as a result of engaging in either of the two previous" clauses in Section 631(a), *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978), fails "as a matter of law" because she "fail[s] to state a claim under either clause 1 or 2," *Mastel*, 549 F. Supp. 3d at 1137.

In short, because Ms. Valenzuela does not, and cannot, allege that Emplifi violated Section 631, her aiding and abetting theory against Kroger fails. *See Vitacost*, 3:22-cv-01854, at *6–7 (dismissing aiding and abetting claim where plaintiff failed to plead webchat vendor violated CIPA; collecting cases).

### 2. Ms. Valenzuela Alleges Emplifi Is an Extension of Kroger, Precluding Derivative Liability.

Even if Ms. Valenzuela could sufficiently allege Emplifi tapped a telephone line to intercept her webchat messages in transit and without her consent, her allegations fail to describe actionable third-party misconduct under Section 631(a). "[T]o establish such violations, [a] Plaintiff must provide facts suggesting that [a third party is] recording Defendant's customers' information for some use or potential future use *beyond simply supplying this information back to Defendant*"; otherwise, the third party is merely acting as an extension of the defendant, who

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

remains subject to the party exception. *Boscov's*, 2023 WL 2338302, at *2. "[T]he question boils down to whether [the third-party vendor] was an independent third party hired to eavesdrop on [the website owner's] communications, or whether [the vendor's] software was merely a tool that [the website owner] used to record its own communications with plaintiff." *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022).

Here, **Ms. Valenzuela alleges precisely what this Court said foreclosed aiding and abetting liability**: She alleges, as the Court put it, that "*Kroger* (not the third-parties . . .) records and stores the conversation using licensed technology created by others." MTD Ord. at 3. The FAC alleges Kroger licenses Emplifi's webchat tool to provide automated customer service for routine requests, and to help Kroger's customer-service agents "continue the conversation" and "step in to resolve [customers'] issue[s]." FAC ¶ 12 (quoting Emplifi webpage). Ms. Valenzuela even alleges the "data is logged on the Defendant's [i.e., Kroger's] server." *Id.* ¶ 15. In short, amendment or not, Ms. Valenzuela cannot escape the fact that "*Kroger* (not the third-parties . . .) records and stores the conversation using licensed technology created by" Emplifi.

The *Vitacost* court recently dismissed effectively indistinguishable aiding and abetting claims where the plaintiff alleged "Defendant provided access, as to Defendant's communications with its customers, to NiceCXone as Defendant's 'third-party vendor.'" *Vitacost*, 3:22-cv-01854, at *7. That court reasoned "[i]n other words, Plaintiff alleges that Defendant is paying NiceCXone, as a vendor, for the service that NiceCXone provides to obtain and store these communications . . . rather than in furtherance of NiceCXone's own independent use of these communications." *Id.* Other courts agree. *See Build.com*, 2023 WL 4535531, at *5 (dismissing webchat aiding and abetting claims; plaintiff alleged "Defendant employ[ed] a third-party software service as a tool to record its own data"); *Sephora*, 2023 WL 2717636, at *13 (same; "a third-party vendor that is

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

deemed to merely facilitate customer chats as an extension of the company does not trigger derivative liability under § 631(a)"); *Cinmar*, 2023 WL 2415592, at *8 (same; "software . . . which intercepts in real time and stores transcripts is more akin to a tape recorder . . . than a friend against the door"); *Am. Eagle*, 2023 WL 2469630, at *8  (same; "Defendant [was] entitled to the party exemption . . . as Plaintiff fail[ed] to plead that the alleged third-party acted independently from Defendant"); *Graham v. Noom, Inc*., 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021) (dismissing session replay aiding and abetting claims; service provider who "captures" and "hosts" client data for defendant's own use acts as an extension of defendant).

Ms. Valenzuela's vague and conclusory allegations that Emplifi "exploits," "monetizes," "use[s]," and "profit[s] from" "the data it gathers through the chat feature" by "bombard[ing]" website visitors with "targeted marketing," *see* FAC ¶¶ 14, 17–18 & Intro., do not save her claim, *see Cinmar*, 2023 WL 2415592, at *9 (allegations third party "'boasts of its ability to harvest valuable data from [webchats] from its clients' and 'defendant and third parties then harvest data for financial gain'" merely suggest "the third party analyzed or used the data on behalf of or in tangent with Defendant"); *Boscov's*, 2023 WL 2338302, at * 2 (allegations third parties "use[d] the code embedded in the chat program to 'harvest valuable data from such customer communications for the benefit of their clients like Defendant' is too vague and conclusory"); *Am. Eagle*, 2023 WL 2469630, at *6–8 (allegation "third parties . . . harvest data for financial gain" insufficient); *Sephora*, 2023 WL 2717636, at *13 (same).

Instead, a plaintiff must allege "specific fact[s]" detailing the third party's improper use of the data. *Hot Topic*, 2023 WL 2026994, at *10.  In a vain effort to avoid the facts of this case, Ms. Valenzuela quotes and mischaracterizes vague and partial statements from various articles and websites, and even misleadingly labels Emplifi a "spyware company."  *See* FAC ¶¶ 10–18, 23, 34–35 & Intro.  Ms.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Valenzuela purports to support her theory with two partial quotes from Emplifi webpages plucked out of context, and vague allegations regarding Meta, a distinct entity not alleged to have any relationship with Emplifi.  None gives rise to a plausible inference that Emplifi uses Kroger's webchats for its own benefit.

First, Ms. Valenzuela cites to an Emplifi webpage purportedly "admit[ting] that it receives and records chat transcripts."  *Id.* ¶ 12 (quoting Emplifi website); *see* RJN, Ex. C.  But the cited webpage does not mention chat "transcripts" at all. It simply states, "[w]hen agents can see the history of a customer's chatbot interactions, they can step in to resolve the issue at hand," and warrants Emplifi "makes this context immediately available within Emplifi Agent."  RJN, Ex. C at 1.  Even if this did reference "recordings" or "transcripts," it says nothing about Emplifi profiting from Kroger's customer's information; rather, it explains how Emplifi can help Kroger.  Everything else on the webpage suggests Emplifi simply provides a customer-service tool: "Emplifi Bot allows companies and their consumers to provide information, resolve questions, and improve overall satisfaction while reducing cases on agent teams."  *Id.*, Ex. C at 1.  In short, this webpage does not plausibly support the inference that Emplifi uses Kroger's customer-service webchats for its own benefit.

Second, Ms. Valenzuela cites a different Emplifi webpage in which she says "Emplifi admits its software is integrated with social media platforms like Meta/Facebook."  FAC ¶ 19 (citing Emplifi website); *see* RJN, Ex. D.  Ostensibly Ms. Valenzuela makes this allegation to support her theory that Emplifi shares information it obtains from Kroger customers with Facebook.  *See* FAC ¶ 19.  But again Ms. Valenzuela mischaracterizes Emplifi's statement.  This webpage discusses irrelevant Emplifi products—Emplifi Publisher and Emplifi Community—not Emplifi Bot.  RJN, Ex. D at 1 (explaining how to "publish content through the Publishing module and respond to fans' messages and comments with the Community Tool"); *see also id.*, Exs. E & F (explaining

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Emplifi Publisher and Emplifi Community, respectively).  Ms. Valenzuela does not allege Kroger uses Emplifi Publisher or Community, and the webpage makes no reference to webchats.  And in any event, the cited webpage explains how companies can use Emplifi Publisher and Community to share content *from their Facebook accounts*, not the other way around.  *See id.*, Ex. C at 1 ("[t]he publishing permissions will allow *you* to publish content through the Publishing module").  In short, this webpage is not only irrelevant, but if it were relevant, it would undermine Ms. Valenzuela's theory by showing data flows—if at all—*from* Kroger's Facebook profile *into* Emplifi.

Last, Ms. Valenzuela cites a Bloomberg Law post which states Meta acquired a third party unrelated to this case—Kustomer[4]—"to profit from private chats."  FAC ¶ 19; *see* RJN, Ex. G.  This article is wholly irrelevant.  Ms. Valenzuela does not allege Kroger does business with or is in any way related to Kustomer.  Nor does she provide any reason to infer Emplifi and Kustomer collaborate in any way.  In fact, Kustomer competes with Emplifi—both provide webchat services.  In any event, to the extent Ms. Valenzuela believes the Bloomberg Law post supports her unsubstantiated theory that Emplifi profits by sharing Kroger's customer-service webchats with Facebook, she errs.  The article does not even suggest *Kustomer* (let alone Emplifi) shares webchat data with Meta.  It discusses only Meta's own chat applications: WhatsApp and Facebook Messenger.  RJN, Ex. G at 1.  Glaringly absent from the article and the FAC are any facts that Meta (or Emplifi) has used Kroger data (or any data) to generate their own "targeted advertising" with which to "bombard" Ms. Valenzuela or any other person.  A court in the Northern District recently observed Ms. Valenzuela's identical allegations in that case were insufficient:

---

[4] Paragraph 19 in the FAC is copy-and-pasted from other complaints filed by Ms. Valenzuela's counsel where the defendant was alleged to use Kustomer.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

> [Ms. Valenzuela] does not allege any facts to plausibly support an inference that any of the potential [third-party webchat] providers share data with Meta.  Instead, [Ms. Valenzuela] alleges only that Meta is integrated with a *different* chat provider—Kustomer.  That is insufficient because [Ms. Valenzuela] does not allege Defendant uses Kustomer on its website.

V*alenzuela*, 2023 WL 3707181, at *4.

In sum, Ms. Valenzuela's own allegations demonstrate that Emplifi operated as an extension of Kroger, and thus Emplifi's conduct, like Kroger's, cannot serve as grounds for a Section 631(a) claim.

### 3. Ms. Valenzuela Fails to Allege the Requisite Knowledge or Intent.

Ms. Valenzuela's aiding and abetting claim fails for another independent reason: She does not, and cannot, allege the required *mens rea*.  "Aiding and abetting requires . . . that 'the defendant acted with [1] knowledge of the criminal purpose of the perpetrator and with [2] an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.'"  *Rodgers v. Hedgpeth*, 320 F. App'x 815, 817 (9th Cir. 2009) (quoting *People v. McCoy*, 25 Cal. 4th 1111, 1118 (2001)); *see People v. Mendoza*, 18 Cal. 4th 1114, 1129 (1998) ("an aider and abettor must intend not only the act of encouraging and facilitating but also the additional criminal act the perpetrator commits").  Ms. Valenzuela must therefore allege facts that Kroger (1) knew Emplifi intended to misuse the recordings in violation of CIPA, *and* (2) intended to encourage or facilitate such violations.  Ms. Valenzuela fails to allege either.

First, Ms. Valenzuela fails to allege in even a conclusory manner that Kroger knew Emplifi intended to violate CIPA, let alone specific facts sufficient to support a reasonable inference that Kroger had such knowledge.  While Ms. Valenzuela alleges Kroger "knows that Emplifi . . . captures" webchats, FAC ¶ 37, that is insufficient.  The relevant question for the "knowledge" requirement is whether

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Kroger knew Emplifi would *misuse* the information for its own purposes in violation of CIPA. *See Rodgers*, 320 F. App'x at 817. Ms. Valenzuela makes no such allegation. She does not allege Kroger and Emplifi made an illicit agreement or communicated in any way about Emplifi's use of Kroger's webchat transcripts, nor does she offer any other theory for how Kroger could have known if Emplifi intended to misuse Kroger's information.

To the contrary, Emplifi's publicly available Terms and Conditions warranted Emplifi "shall not retain, use, or disclose the Customer Private Data processed on your [its customers'] behalf for any purpose other than for the specific purpose of providing the Services," and it defined Customer Private Data as including the "contents of your conversations with" customers. RJN, Ex. I (Emplifi T&C July 2022) §§ 5.3.1, 8.1.1; *see id.*, Ex. J (current Emplifi T&C making same representations). In short, the facts alleged in the FAC and judicially noticeable materials do not reasonably support the inference that Kroger had any reason to suspect Emplifi violated Section 631(a), much less *actually knew* of any violations. *See So v. Bay Area Rapid Transit*, 2013 WL 5663207, at *12 (N.D. Cal. Oct. 17, 2013) (dismissing derivative liability claim where "the allegations as pleaded permit[ted] the court to infer, at the most, that Defendants might have had a vague suspicion of wrongdoing").

Second, even if Ms. Valenzuela sufficiently alleged Kroger knew Emplifi intended to violate CIPA (she does not and cannot), this is insufficient because "mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting." *In re Michael T.*, 84 Cal. App. 3d 907, 911 (1978). Ms. Valenzuela fails to allege Kroger acted with the intent to facilitate any CIPA violations. Ms. Valenzuela's allegation that Kroger "intentionally caused the internet communication[s] . . . to be recorded" is irrelevant. FAC ¶ 36; *see id.* ¶ 8 (alleging Kroger "enables" and "allows" Emplifi "to eavesdrop on" chat communications). Under the party exception, Kroger may hire a vendor to record

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  its webchats.  *Supra* § IV.A.2.  Further, her conclusory allegation that Kroger

2  "allow[s]" Emplifi to "exploit[] and monetize the chat conversations," FAC ¶ 10 &

3  Intro., is insufficient because no facts support it, and because Kroger "must have

4  done more than simply observe the [unlawful] activities," *United States v.*

5  *Vasquez-Chan*, 978 F.2d 546, 552 (9th Cir. 1992), *overruled on other grounds by*

6  *United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010).  "Mere knowledge" that an

7  unlawful act "is being committed and the failure to prevent it does not constitute"

8  aiding and abetting.  *So*, 2013 WL 5663207, at *12 (citing *Austin B. v. Escondido*

9  *Union Sch. Dist.*, 149 Cal. App. 4th 860, 879 (2007)) (dismissing aiding and

10  abetting claim); *see Vasquez-Chan*, 978 F.2d at 552 (evidence defendants "clearly

11  knew" illegal activity was occurring "in the house in which they resided"

12  insufficient for aiding and abetting liability).  Ms. Valenzuela's sole allegation that

13  Kroger "embed[ded]" Emplifi's software into the Kroger website, FAC ¶ 36, does

14  not reasonably give rise to the inference that Kroger did so with the purpose of

15  helping Emplifi allegedly violate CIPA.

16      In sum, Ms. Valenzuela does not plausibly allege that Kroger knew of any

17  purported CIPA violations by Emplifi, let alone that Kroger acted with the specific

18  intent to facilitate such violations.  Her claim under Section 631(a)'s fourth clause

19  fails on these additional grounds.[5]

20      **B.    Ms. Valenzuela Fails to State a Claim Under Section 632.7.**

21      Ms. Valenzuela's new Section 632.7 claim fails because (1) that section

22  applies only to communications between two telephones, (2) she impliedly

23  consented to any recording, and (3) she fails to allege an aiding and abetting claim.

24

25

26

_____

27  [5] Ms. Valenzuela mentions the Google Global Site Tag in passing, but makes no attempt to connect this tag with her claims.  *See* FAC ¶¶ 16–17.  The allegations

28  are in any event irrelevant because Ms. Valenzuela does not allege Kroger aids and abets Google, or that Google is connected in any way to Emplifi.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### 1.    Section 632.7 Does Not Apply to Online Chats.

Section 632.7 is a call recording statute.  By its plain terms, it applies only to communications "transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone[.]"  Cal. Penal Code § 632.7(a); *see also Smith*, 11 Cal. 5th at 187 (statute prohibits recording of communications "transmitted between a cellular or cordless telephone and another telephone").  "The unambiguous meaning of the statue is thus that it only applies to communications involving two telephones." *Hot Topic*, 2023 WL 2026994, at *10; *see Build.com*, 2023 WL 4535531, at *6 ("A plain reading of the text makes clear that the statute only applies to communications transmitted by telephone, not internet."); *Montantes*, 2014 WL 3305578, at *4 ("[T]he communication must have a cellular radio or cordless telephone on one side, and a cellular radio, cordless, or landline telephone on the other side."); *Moledina v. Marriott Int'l, Inc.*, 2022 WL 16630276, at *7 (C.D. Cal. Oct. 17, 2022) (same).

Ms. Valenzuela fails to satisfy this requirement.  First, Ms. Valenzuela alleges she communicated with Kroger's "Website."  FAC ¶ 2.  But "[Kroger's] website is simply not a 'landline telephone.'"  *Vitacost*, 3:22-cv-01854, at *9.  "[B]y definition" these website communications "cannot involve two telephones." *Hot Topic*, 2023 WL 2026994, at *10.  Section 632.7 was "intended to apply to a narrow set of communication over telephone technology" not alleged here, and thus the claim fails.  *Cinmar*, 2023 WL 2415591, at *13.[6]

Second, Ms. Valenzuela's use of her smart phone's web browser does not qualify as the telephone "call" this statute is intended to protect.  *See* FAC ¶ 2 (Ms.

---

[6] Ms. Valenzuela's FAC cites Judge Sunshine S. Sykes's opinion regarding this requirement of Section 632.7 in *Byars v. Goodyear Tire & Rubber Co.*, 2023 WL 1788553, at *5 (C.D. Cal. Feb. 3, 2023).  FAC ¶ 46; *accord Licea v. Old Navy, LLC*, 2023 WL 3012527, at *3–4 (C.D. Cal. Apr. 19, 2023) (Sykes, J.).  Kroger

DAVIS WRIGHT TREMAINE
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Valenzuela used her smart phone to communicate with Kroger).  As courts have explained, "'although iPhones contain the word 'phone' in their name,' Plaintiff was using 'a feature of the portion of the iPhone that functions as a computer, not the phone.'"  *Cinmar*, 2023 WL 2415592, at *12 (quoting *Mastel*, 549 F. Supp. 3d at 1135) (dismissing § 632.7 webchat claim); *see Mastel*, 549 F. Supp. 3d at 1135 (concluding smart phone did not meet definition of "telephone" under § 631(a)); *Vitacost*, 3:22-cv-01854, at *9 ("Plaintiff's use of his smartphone—not to make a phone call, but rather to engage the chat feature of Defendant's website—arguably independently places Plaintiff's own device outside the scope of a 'cellular radio telephone.'"); *Build.com*, 2023 WL 4535531, at *6 ("Transmission by internet through a device called 'phone' is not sufficient.").  Ms. Valenzuela cannot credibly dispute that computers are *not* subject to Section 632.7; neither is her smart phone when she uses it as a computer.

Because Ms. Valenzuela bases her Section 632.7 claim on a webchat she initiated with Kroger's website through a web browser, it necessarily fails and should be dismissed with prejudice.

## 2.    Ms. Valenzuela Consented to Any Recording.

Ms. Valenzuela's Section 632.7 claim also fails because Section 632.7 only prohibits recording conversations "without . . . consent."  Cal. Penal Code § 632.7(a).  Consent may be implied, and "[t]he circumstances involved with certain kinds of communications may lead to a reasonable inference that a party

---

directs the Court to decisions refusing to follow *Goodyear* based on CIPA's plain language and a thorough analysis of relevant precedent.  *See Hot Topic*, 2023 WL 2026994, at *11 ("persuasive authority like *Goodyear* is only relevant to the extent of its ability to *persuade*, and the Court respectfully disagrees with *Goodyear*'s Section 632.7 holding," which "[c]ircumvents the plain language of Section 632.7"); *Sephora*, 2023 WL 2717636, at *15 ("*Goodyear* appears to be an outlier case . . . . The Court finds *Goodyear* to be unpersuasive [] and declines to adopt its rulings due to its circumvention of the plain language of § 632.7 and faulty reliance on plainly distinguishable caselaw"); *Valenzuela*, 2023 WL 3707181, at *6 ("The Court finds [*Goodyear*] unpersuasive for the reasons stated in *Byars v. Hot Topic*[.]").

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  sending a communication has consented to having it recorded by the intended

2  recipient[.]" *Smith*, 11 Cal. 5th at 194 n.4.  As discussed *supra* § IV.A.1.b., Ms.

3  Valenzuela impliedly consented to any alleged recording that she contends violates

4  Section 632.7 because she (1) typed the message out herself in recorded format,

5  (2) was well aware of common recording practices based on her multiple July 2022

6  lawsuits, and (3) Kroger's Privacy Policy publicly disclosed Kroger records

7  customer information like the webchats.

8      Based on these allegations and judicially noticeable facts, the only plausible

9  conclusion is Ms. Valenzuela was aware Kroger would use a third-party vendor to

10  record her chats, yet voluntarily proceeded, thereby consenting.  She therefore

11  cannot state a claim under Section 632.7.

12          **3.    Kroger Cannot Be Liable for Aiding and Abetting Under**

13              **Section 632.7.**

14      Last, Ms. Valenzuela alleges Kroger should be liable for "aid[ing] and

15  abett[ing] a third party in the interception, reception, and/or intentional

16  recordation" of the chat communication pursuant to Section 632.7.  FAC ¶ 45.  But

17  there can be no "aiding and abetting" liability here because Section 632.7 simply

18  does not apply: The online chat did not occur between two qualifying telephones,

19  and Ms. Valenzuela impliedly consented to having her written message "recorded"

20  when she typed them out and sent them to Kroger.  *See Vitacost*, 3:22-cv-01854, at

21  *9 ("As there is no violation of Section 632.7 here, Defendant cannot be liable for

22  aiding and abetting its vendor.").  In any case, Ms. Valenzuela fails to allege

23  Kroger aided and abetted in any wrongdoing, for the same reasons as under

24  Section 631(a).  *Supra* § IV.A.3.

25      In sum, Ms. Valenzuela's claims each fail.  But to the extent the Court finds

26  any ambiguity in the provisions at issue, it "should be interpreted in favor of the

27  alleged violator" because "we are dealing with a penal statute."  *Warden v. Kahn*,

28  99 Cal. App. 3d 805, 817 n.3 (1979).

MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# V.    CONCLUSION

The Court should dismiss Ms. Valenzuela's FAC.  Because the legal deficiencies cannot be remediated and she already amended her complaint, dismissal should be with prejudice.


Dated:  July 31, 2023                         DAVIS WRIGHT TREMAINE LLP
                                                      Jacob M. Harper
                                                      James H. Moon
                                                      Sancho Accorsi

                                              By: */s/ Jacob M. Harper*
                                                      Jacob M. Harper

                                              *Attorneys for Defendant The Kroger Co.*

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899