DAVIS WRIGHT TREMAINE LLP
  Jacob M. Harper (SBN 259463)
  *jacobharper@dwt.com*
  James H. Moon (SBN 268215)
  *jamesmoon@dwt.com*
  Sancho Accorsi (SBN 329413)
  *sanchoaccorsi@dwt.com*
865 South Figueroa Street, 24th Floor
Los Angeles, CA 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant*
*The Kroger Co.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONYA VALENZUELA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE KROGER CO., an Ohio Corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:22-cv-6382-DMG-AGR<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Request for Judicial Notice, Declaration of Jacob M. Harper, and Proposed Order Filed Concurrently*]<br><br>Assigned to the Hon. Dolly M. Gee<br>Courtroom 8C<br><br>Date: June 7, 2024<br>Time: 9:30 a.m.<br><br>Action Filed: August 3, 2022 |

MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 7, 2024, at 9:30 a.m., in Courtroom 8C of the above-captioned Court, located at the United States Courthouse, 350 West 1st Street, Los Angeles, California 90012, defendant The Kroger Co. will and hereby does move the Court for an order dismissing with prejudice the Second Amended Complaint of plaintiff Sonya Valenzuela pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is made on the grounds that Ms. Valenzuela's claim for violation of the California Invasion of Privacy Act (CIPA), Cal. Penal Code § 631, fails as a matter of law. Ms. Valenzuela implausibly alleges Kroger aids and abets its software vendor to illegally eavesdrop on Kroger's own customer communications. But Ms. Valenzuela alleges no facts supporting the inference that Kroger knew the vendor itself intended to violate CIPA, let alone that Kroger paid the vendor with the purpose of facilitating that violation. After three opportunities to plead her case Ms. Valenzuela has failed to state a claim. The Court should therefore dismiss her sole remaining claim with prejudice.

This motion is based on this notice; the concurrently filed memorandum, request for judicial notice, and declaration; all pleadings, records, and files in this action; and such evidence and argument as may be presented at or before the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 7, 2022.

Dated: May 9, 2024

DAVIS WRIGHT TREMAINE LLP

By: /s/ Jacob M. Harper
Jacob M. Harper

*Attorneys for Defendant The Kroger Co.*

1
MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND .....................................................................................................2

    A. Ms. Valenzuela "Tests" Kroger's Webchat Tool. ....................................2

    B. Ms. Valenzuela and Her Counsel File Dozens of Boilerplate Complaints. ..................................................................................................2

    C. The Court Dismisses Ms. Valenzuela's Initial Complaint. ....................3

    D. The Court Dismisses Ms. Valenzuela's First Amended Complaint. ..................................................................................................4

    E. Ms. Valenzuela's Second Amended Complaint Adds No Allegations of Consequence. ....................................................................5

III. LEGAL STANDARD ............................................................................................5

IV. MS. VALENZUELA STILL FAILS TO ALLEGE AIDING AND ABETTING OF CRIMINAL ACTIVITY .......................................................6

    A. Ms. Valenzuela Does Not Allege Kroger Had Actual Knowledge of Emplifi's Alleged Section 631 Violation. .....................6

        1. The SAC Repeats Allegations Already Rejected as Insufficient. ..............................................................................................7

        2. The Additional Allegations Do Not Suffice. ............................8

            a. Integration with Facebook. ............................................8

            b. Training Emplifi Products. ............................................10

            c. Client-Branded Webchat Tool. .....................................11

    B. Ms. Valenzuela Does Not Allege Kroger Intended to Aid Emplifi in Violating Section 631. .................................................................12

V. CONCLUSION ......................................................................................................14

i

MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
　824 F. Supp. 2d 1164 (C.D. Cal. 2011).................................................................7

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ..........................................................................................5, 6

*Barrett v. Apple Inc.*,
　523 F. Supp. 3d 1132 (N.D. Cal. 2021).............................................................13

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ..........................................................................................5, 6

*Byars v. Hot Topic, Inc.*,
　656 F. Supp. 3d 1051 (C.D. Cal. 2023)...............................................................1

*Cahill v. Liberty Mut. Ins. Co.*,
　80 F.3d 336 (9th Cir. 1996) ..................................................................................6

*Cain v. Twitter Inc.*,
　2018 WL 4657275 (N.D. Cal. Sept. 24, 2018)...............................................9, 11

*Fiol v. Doellstedt*,
　50 Cal. App. 4th 1318 (1996) ..............................................................................7

*Gerard v. Ross*,
　204 Cal. App. 3d 968 (1988) .............................................................................13

*Heiting v. Taro Pharms. USA, Inc.*,
　2024 WL 1626114 (C.D. Cal. Apr. 2, 2024).......................................................9

*In re First All. Mortg. Co.*,
　471 F.3d 977 (9th Cir. 2006) ..................................................................6, 10, 13

*James v. Walt Disney Co.*,
　2023 WL 7392285 (N.D. Cal. Nov. 8, 2023).....................................................11

*Licea v. Vitacost.com, Inc.*,
　2023 WL 5086893 (S.D. Cal. July 24, 2023)......................................................1

ii
MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Case 2:22-cv-06382-DMG-AGR   Document 48   Filed 05/09/24   Page 5 of 19   Page ID #:751

*Martin v. Sephora USA, Inc.*,
　2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ....................................................... 1

*People v. Bowman*,
　156 Cal. App. 2d 784 (1958) ............................................................................... 12

*People v. Diaz*,
　207 Cal. App. 4th 396 (2012) ............................................................................. 12

*People v. Hardy*,
　5 Cal. 5th 56 (2018) ............................................................................................ 13

*People v. Koenig*,
　58 Cal. App. 5th 771 (2020) ............................................................................... 13

*People v. Prettyman*,
　14 Cal. 4th 248 (1996) ........................................................................................ 13

*So v. Bay Area Rapid Transit*,
　2013 WL 5663207 (N.D. Cal. Oct. 17, 2013) ..................................................... 10

*Somers v. Apple, Inc.*,
　729 F.3d 953 (9th Cir. 2013) ................................................................................ 6

*Valenzuela v. BJ's Wholesale Club, Inc.*,
　2:22-cv-06378 (C.D. Cal.) .................................................................................... 3

*Warden v. Kahn*,
　99 Cal. App. 3d 805 (1979) ................................................................................ 13

**Statutes**

Cal. Penal Code
　§ 631(a) ......................................................................................................... *passim*
　§ 637.2(a) .............................................................................................................. 4

iii
MOTION TO DISMISS SECOND AMENDED COMPLAINT

865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is plaintiff Sonya Valenzuela's third attempt to state a claim under the California Invasion of Privacy Act (CIPA) based on the ubiquitous business practice of storing customer-service chat messages. The Second Amended Complaint, ECF No. 47 (SAC)—like the 150 nearly identical class action complaints filed by Ms. Valenzuela's counsel—presents the same "incoherent," *Licea v. Vitacost.com, Inc.*, 2023 WL 5086893, at *2 (S.D. Cal. July 24, 2023), "cookie-cutter," *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1059 (C.D. Cal. 2023), and implausible, *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *8 n.7 (E.D. Cal. Mar. 30, 2023), *adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023), allegations as the boilerplate pleadings preceding it. The Court has generously provided Ms. Valenzuela with repeated opportunities to plead a viable claim under CIPA. She has failed to do. The SAC should be dismissed with prejudice.

Ms. Valenzuela's prior pleading—the First Amended Complaint, ECF No. 36 (FAC)—alleged Kroger violated each of CIPA § 631(a)'s four clauses. Section 631(a)'s first three clauses criminalize (1) wiretapping, (2) eavesdropping, and (3) using information improperly obtained by wiretapping or eavesdropping. Cal. Penal Code § 631(a). The Court dismissed with prejudice any claims against Kroger under these clauses because a participant to a communication (like Kroger) cannot be directly liable for wiretapping or eavesdropping, and Ms. Valenzuela did not allege Kroger used illegally obtained communications. Ord. Granting Motion to Dismiss, ECF No. 46 (MTD FAC Ord.) at 3 & n.4.

Ms. Valenzuela also failed to allege Kroger violated Section 631(a)'s fourth clause, which prohibits "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with" another person to violate Section 631. Cal. Penal Code § 631(a). The Court concluded that although Ms. Valenzuela stated a claim against third-party *Emplifi*—Kroger's webchat vendor—for eavesdropping under Section 631(a)'s

MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

second clause, she failed to allege Kroger met the scienter requirement under the fourth clause. MTD FAC Ord. 7. Ms. Valenzuela failed to allege "how Kroger … knew Emplifi's conduct constituted a" violation of Section 631. *Id.*

The Court permitted amendment on the narrow issue of whether Kroger knew Emplifi allegedly violated Section 631. ***The SAC fails to meet the Court's request for factual allegations plausibly supporting the inference that Kroger at least knew Emplifi violated Section 631.*** While the SAC added a handful of new allegations, SAC ¶¶ 26–34, 45–46, they merely restate facts the Court rejected in dismissing the FAC or cite public statements from Emplifi that make no mention of Kroger or its state of mind. Further, Ms. Valenzuela alleges no facts to support the inference that Kroger licensed Emplifi's webchat tool with the specific intent to help Emplifi eavesdrop in violation of Section 631(a)'s second clause, even if Kroger knew of Emplifi's alleged violation.

Ms. Valenzuela thus fails a third time to allege Kroger had a culpable mental state. The Court should dismiss her cookie-cutter case with prejudice.

## II. BACKGROUND

### A. Ms. Valenzuela "Tests" Kroger's Webchat Tool.

Kroger offers customers quick and convenient customer-service information through its chat tool on its website. SAC ¶¶ 2–3. Ms. Valenzuela alleges she had "a brief conversation" with Kroger in July 2022 using the webchat tool. *Id.* ¶ 2.

### B. Ms. Valenzuela and Her Counsel File Dozens of Boilerplate Complaints.

Ms. Valenzuela brought this case on August 3, 2022. Complaint, ECF No. 1-1. Her suit is part of a wave of (now) well over two hundred nearly identical class actions across California (at least 150 filed by Ms. Valenzuela's counsel, and

MOTION TO DISMISS SECOND AMENDED COMPLAINT — 2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

at least 30 with Ms. Valenzuela as named plaintiff), asserting violations of CIPA based on companies' webchats with customers.[1]

### C. The Court Dismisses Ms. Valenzuela's Initial Complaint.

Ms. Valenzuela's initial complaint alleged Kroger violated CIPA § 631. Section 631 prohibits (1) wiretapping, (2) eavesdropping, (3) using a communication obtained through wiretapping or eavesdropping, and (4) aiding another in committing the first three types of conduct.  Cal. Penal Code § 631(a).

The Court dismissed Ms. Valenzuela's complaint, ruling she could not as a matter of law state a claim against Kroger for itself violating Section 631(a)'s first three clauses because they do not apply to participants to a communication, such as Kroger.  Ord. Granting Motion to Dismiss, ECF No. 35 (MTD Compl. Ord.) at 2–

---

[1] Ms. Valenzuela is a self-professed "tester" who goes to businesses' websites intending for her webchat communications to be recorded.  *See* Declaration of Jacob M. Harper (Harper Decl.) Ex. F (*Valenzuela v. BJ's Wholesale Club, Inc.*, 2:22-cv-06378 (C.D. Cal.), First Amended Complaint) ¶ 15.

She is named plaintiff in at least these cases: *Valenzuela v. AFLAC Inc.*, No. 22-6348 (C.D. Cal.); *Valenzuela v. AIG Direct Ins. Servs.*, No. 22-1561 (C.D. Cal.); *Valenzuela v. Amica Mut. Ins. Co.*, No. 23STCV04849 (L.A. Sup. Ct.); *Valenzuela v. Beauty Industry Grp. Opco, LLC*, No. 23STCV28408 (L.A. Sup. Ct.); *Valenzuela v. BJ's Wholesale Club, Inc.*, No. 22-6378 (C.D. Cal.); *Valenzuela v. Bootbarn Inc.*, No. 22STCV40497 (L.A. Sup. Ct.); *Valenzuela v. Build-A-Bear Workshop, Inc.*, No. 23-5162 (C.D. Cal.); *Valenzuela v. Carvana LLC*, No. CVRI2204530 (Riv. Sup. Ct.); *Valenzuela v. CNO Servs. LLC*, No. 22-2084 (C.D. Cal.); *Valenzuela v. Delivery.com LLC*, No. 30-2023-01336839-CU-MT-CXC (O.C. Sup. Ct.); *Valenzuela v. Dermacare LLC*, No. 37-2022-00047405-CU-MT-CTL (S.D. Sup. Ct.); *Valenzuela v. Engage3, Inc.*, No. 30-2022-01297903-CU-MT-CXC (O.C. Sup. Ct.); *Valenzuela v. Farfetch.com US LLC*, No. 23STCV00831 (L.A. Sup. Ct.); *Valenzuela v. Givenchy Corp.*, No. 23STCV01298 (L.A. Sup. Ct.); *Valenzuela v. Hims & Hers Health Inc.*, No. 23-0011 (S.D. Cal. ); *Valenzuela v. Kaspersky Lab, Inc.*, No. 22-9157 (C.D. Cal.); *Valenzuela v. Keurig Green Mountain, Inc.*, No. 22-9042 (N.D. Cal.); *Valenzuela v. The Kroger Co.*, No. 22-6382 (C.D. Cal.); *Valenzuela v. MAC Cosmetics Inc.*, No. 22-1360 (C.D. Cal.); *Valenzuela v. Massage Envy Franchising LLC*, No. 22-5817 (C.D. Cal.); *Valenzuela v. Michael Kors (USA) Inc.*, No. 22-5902 (C.D. Cal.); *Valenzuela v. Nationwide Mut. Ins. Co.*, No. 22-6177 (C.D. Cal.); *Valenzuela v. Papa Murphy's Int'l, LLC*, No. 22-1789 (C.D. Cal.); *Valenzuela v. Pear Sports LLC*, No. CVRI2204529 (Riv. Sup. Ct.); *Valenzuela v. Pierre Fabre USA Inc.*, No. 22-2079 (S.D. Cal.); *Valenzuela v. RugsUSA LLC*, No. 23-0024 (C.D. Cal.); *Valenzuela v. Super Bright LEDS Inc.*, No. 23-1148 (C.D. Cal.); *Valenzuela v. Under Armour, Inc.*, No. 22STCV24206 (L.A. Sup. Ct.); *Valenzuela v. W. Marine Prods. Inc.*, No. 22-2082 (C.D. Cal.); *Valenzuela v. VF Outdoor LLC*, No. 37-2022-00046954-CU-MT-CTL (S.D. Sup. Ct.).

3
MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

3. And the Court held she failed to allege facts supporting a claim under Section 631(a)'s fourth clause. *Id.* at 3–4. The Court granted leave to amend. *Id.* at 4.

### D. The Court Dismisses Ms. Valenzuela's First Amended Complaint.

Ms. Valenzuela's FAC theorized that Kroger's webchat vendor—third-party Emplifi—used the software it licensed to Kroger to "intercept and eavesdrop" on the customer-service chats it facilitated, and then to "provide[] data from such transcripts to Meta and similar entities through 'integration' of their softwares." FAC ¶¶ 10, 24. Ms. Valenzuela purported to support this theory with citations to Emplifi webpages and a Bloomberg Law article describing Meta, Inc.'s (Meta) involvement with a different, unrelated webchat vendor. *Id.* ¶¶ 12, 19, 21.

The Court again dismissed Ms. Valenzuela's aiding and abetting theory. Ord. Granting Motion to Dismiss, ECF No. 46 (MTD FAC Ord.). It first addressed whether Ms. Valenzuela plausibly alleged Emplifi itself committed an underlying violation of Section 631. The Court foreclosed any claim premised on Emplifi violating Section 631(a)'s **first clause**, for wiretapping, because that clause applies only to telephonic communications unlike the webchats here. *Id.* at 3. But the Court concluded Ms. Valenzuela's theory that Emplifi violated Section 631(a)'s **second clause**, for eavesdropping, survived. *Id.* at 3–7. Finally, the Court observed Ms. Valenzuela did not allege Kroger itself violated Section 631(a)'s **third clause**, which prohibits using information obtained through illegal wiretapping or eavesdropping, *id.* at 3 n.4, which in turn foreclosed any claim that Emplifi itself is liable under this clause because the FAC did not identify any other party who could have initially wiretapped or eavesdropped on the webchats.[2]

Although Ms. Valenzuela adequately alleged Emplifi violated Section 631(a)'s second clause, the Court dismissed the claim against Kroger under Section 631(a)'s **fourth clause** because Ms. Valenzuela "fail[ed] to include

---

[2] The FAC also included a claim under CIPA § 632.7. FAC ¶¶ 41–45. The Court dismissed this claim with prejudice. MTD FAC Ord. 7–9.

4
MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

plausible allegations in the FAC explaining how Kroger … knew Emplifi's conduct constituted a" violation of Section 631. *Id.* at 7. The Court rejected Ms. Valenzuela's allegations that "Kroger knew Emplifi 'captured communications' via code that Kroger 'allowed' Emplifi to embed" in its website because "'capturing' data is not necessarily a Section 631(a) violation." *Id.* at 6 (quoting FAC ¶ 37). For instance, "if Kroger believed it was merely using embedded software like a tape recorder to archive conversations, that would not give rise to a violation." *Id.*

In sum, Ms. Valenzuela is left with a narrow path to stating a claim: She must plausibly allege Kroger violated Section 631(a)'s fourth clause by licensing Emplifi's webchat software with the knowledge that Emplifi would violate Section 631(a)'s second clause.

### E. Ms. Valenzuela's Second Amended Complaint Adds No Allegations of Consequence.

Ms. Valenzuela's SAC adds 11 new paragraphs and relies on cherry-picked statements largely from the same Emplifi webpages the Court already considered. *See* SAC ¶¶ 26–34, 45–46; Harper Decl., Ex. A (redline comparison of FAC and SAC). These webpages never mention Kroger and still do not support the allegation that Kroger had the necessary mental state under Section 631.

### III. LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss, a complaint must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim for relief requires "factual content that allows the court to draw the reasonable inference that the defendant is responsible for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. Courts may properly dismiss if the complaint "either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Dismissal should be with prejudice where amendment would be futile in curing a complaint's legal deficiencies. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996).

## IV. MS. VALENZUELA STILL FAILS TO ALLEGE AIDING AND ABETTING OF CRIMINAL ACTIVITY

Ms. Valenzuela's theory is that Emplifi violated Section 631(a)'s second clause, which makes it a felony to willfully or in an unauthorized manner eavesdrop. Cal. Penal Code § 631(a). She believes Kroger is liable for Emplifi's violation pursuant to Section 631(a)'s fourth clause, which makes it a felony to "aid[], agree[] with, employ[], or conspire[] with" another person "to unlawfully do … any of the acts or things mentioned above in" Section 631. *Id.* Her theory fails because she does not plausibly allege Kroger actually "knew Emplifi's conduct" violated Section 631, MTD FAC Ord. 7, nor that Kroger specifically intended to aid that violation even if it did.

### A. Ms. Valenzuela Does Not Allege Kroger Had Actual Knowledge of Emplifi's Alleged Section 631 Violation.

The Court held Ms. Valenzuela must make "plausible allegations … explaining how Kroger … knew Emplifi's conduct constituted a" violation of Section 631. MTD FAC Ord. 7. The aiding and abetting standard applied by the Court requires that a defendant have "actual knowledge of the specific primary wrong." *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006). Actual knowledge is "more than a vague suspicion of wrongdoing." *Id.* at 993 n.4. A complaint does not survive the pleadings if it does not "state factual content that allows the court to draw the reasonable inference that the defendant" had actual

6
MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

knowledge. *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1188 (C.D. Cal. 2011) (citation omitted).

Ms. Valenzuela therefore must allege facts supporting the inference Kroger actually knew that Emplifi's conduct violated Section 631(a)'s second clause. She must allege Kroger actually knew Emplifi would willfully or in an unauthorized manner eavesdrop on the webchats in transit and without consent, Cal. Penal Code § 631(a), and that Emplifi was independent from Kroger in that it used or could use the webchat data for its own purposes, *see* MTD FAC Ord. 7 (explaining courts require either that a third party software vendor "use" or "have the capability to use" recordings for its own use).[3]

The SAC falls short because (1) it relies almost entirely on the same factual allegations the Court already found insufficient, and (2) its new allegations mischaracterize webpages that say nothing about Kroger.

### 1. The SAC Repeats Allegations Already Rejected as Insufficient.

Ms. Valenzuela's SAC peddles the same baseless conspiracy theory as her FAC, which failed to allege Kroger's knowledge of any wrongdoing. The SAC—just like the FAC—alleges Kroger "allowed" Emplifi "to embed its chat technology code … into the chat feature" on Kroger's website, and that, using this software, Emplifi "capture[d] … communications" which it "use[d] … for data analytics and marketing/advertising to consumers." SAC ¶¶ 10, 22, 48; *see* FAC

---

[3] The Court also concluded Ms. Valenzuela failed to allege derivative liability because she failed to allege "how Kroger itself engaged in conduct constituting a breach of a duty." MTD FAC Ord. 7; *see id.* at 6 (citing *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325–26 (1996), for the proposition that aiding and abetting liability can also arise where a person "gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person"). Ms. Valenzuela does not allege this theory of liability, and in any case, the Court's order foreclosed it. The Court ruled Kroger's "own conduct, separately considered," cannot as a matter of law violate Section 631(a)'s first, second, or third clauses. MTD FAC Ord. 3; MTD Compl. Ord. 2. (Ms. Valenzuela has not alleged Kroger violated the third clause. MTD FAC Ord. 3 n.4.)

7
MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

¶¶ 10, 22, 37 (same allegations). The SAC alleges that Kroger knew about Emplifi's conduct because "Emplifi admit[ted] that it receive[d] and record[ed] chat transcripts" and "admit[ted] its software [was] integrated with social media platforms like Meta/Facebook"—just as did the FAC. SAC ¶¶ 12, 19, 22; *see* FAC ¶¶ 12, 19, 22 (same allegations). The Court already found these allegations insufficient to allege Kroger actually knew of Emplifi's alleged wrongdoing. MTD FAC Ord. 6–7. Ms. Valenzuela offers no reason to revisit this conclusion.

### 2. The Additional Allegations Do Not Suffice.

The SAC's handful of new allegations depend, as did the FAC, on general statements about Emplifi plucked from the internet. These statements never mention Kroger, refer to irrelevant Emplifi features, and flatly contradict Ms. Valenzuela's accusations. They fall into three categories: (1) irrelevant allegations regarding how clients can integrate their Emplifi and Facebook accounts, SAC ¶¶ 26, 28–29, 45–46; (2) a baseless allegation that Emplifi uses its clients' information to "train" its products, *id.* ¶¶ 30–34, 45; and (3) an unremarkable observation that Emplifi's clients can customize their webchat tools to match their own "branding," *id.* ¶¶ 27, 46. None plausibly alleges that Kroger knew Emplifi intended to violate Section 631.

#### a. Integration with Facebook.

The SAC, like the FAC, focusses on Emplifi's public statements that Emplifi's clients can integrate certain Emplifi products with the clients' Facebook accounts. SAC ¶¶ 26, 28–29, 45–46. Specifically, Ms. Valenzuela cites *the same Emplifi webpage she cited in the FAC* advertising that Emplifi customers can communicate directly with "Facebook Messenger users [who] opt in." *Id.* ¶ 28 (quoting "Emplifi Bot" webpage attached at Harper Decl., Ex. B). She adds a citation to what may be another Emplifi webpage that advertises Emplifi clients can "direct message a customer on their social channel," but she does not include a

8
MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

hyperlink. *Id.* ¶ 29.[4]  These allegations fail to plausibly allege Kroger actually knew Emplifi could or would use Kroger's webchat transcripts for its own benefit.

First, Ms. Valenzuela's allegations affirmatively *foreclose* an inference of aiding and abetting.  The fact that users must "opt in" in order for Emplifi clients to message users through Facebook Messenger, SAC ¶ 28, rules out a claim under Section 631(a)'s second clause, which only applies to eavesdropping "without consent," Cal. Penal Code § 631(a).

Second, and in any case, neither webpage says anything about Kroger and Ms. Valenzuela never alleges Kroger saw either.  It is not enough to allege Kroger "should have known" Emplifi violated Section 631 (it should not have).  *Cain v. Twitter Inc.*, 2018 WL 4657275, at *3 (N.D. Cal. Sept. 24, 2018) (under analogous statutory aiding and abetting standard, plaintiffs failed to allege actual knowledge where the complaint "[at] most[] allege[d] that Twitter should have known" direct perpetrators used the Twitter platform for criminal activity and "that it ignored the possible consequences of letting" the direct perpetrators "operate on its platform"). The court in *Heiting v. Taro Pharms. USA, Inc.* described similar allegations regarding scienter as "concerningly vague" where the complaint contained no allegations regarding the specific contractual arrangement between the website owner and the webchat vendor, though it dismissed on other grounds.  2024 WL 1626114, at *10 n. 14 (C.D. Cal. Apr. 2, 2024).  The same is true here: Ms. Valenzuela alleges nothing about what Kroger actually knew about Emplifi.

Third, even if Kroger had read the webpages, they would not have provided Kroger "actual knowledge" that Emplifi could or would use Kroger's webchats. For one thing, Ms. Valenzuela does not allege Kroger uses the Emplifi features the webpages advertise.  Further, these webpages do not *actually say* Emplifi can use webchat transcripts for its own benefit.  At most they suggest Emplifi integrates its

---

[4] Kroger was unable to locate this webpage.

9
MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

webchat tool with *its clients'* social media accounts for *its clients'* benefit. Thus, these allegations do not provide a reasonable factual basis to infer Kroger had actual knowledge that Emplifi violated Section 631(a)'s second clause with respect to Kroger's webchats because they at most *suggest* that Emplifi could abuse products *irrelevant* to this case in a manner *similar* to the conduct Ms. Valenzuela alleges. Given the number of inference and assumptions standing between these allegations and the conclusion that Emplifi would illegally eavesdrop on Kroger's webchats, these allegations do not even support "a vague suspicion of wrongdoing." *In re First All.*, 471 F.3d at 993 n.4; *see So v. Bay Area Rapid Transit*, 2013 WL 5663207, at *12 (N.D. Cal. Oct. 17, 2013) (dismissing aiding and abetting claim where allegations at most permitted inference "that Defendants might have had a vague suspicion of wrongdoing").

In short, these new allegations go no further than did the FAC's allegation that Emplifi products can integrate with Facebook. FAC ¶ 19 (citing "Connect Facebook Insights and Publishing Permissions" webpage attached at Harper Decl., Ex. C). That theory was insufficient to allege Kroger had actual knowledge of Emplifi's alleged wrongdoing, and the SAC is no different.

### b. Training Emplifi Products.

The SAC also suggests Kroger knew Emplifi used webchat data to "train and improve" Emplifi products and "share consumer data with third parties." SAC ¶¶ 30–34, 45. Ms. Valenzuela supports this theory by mischaracterizing a single Emplifi webpage—but again the webpage, titled "Intents Analytics," does not support the inference Kroger actually knew Emplifi eavesdropped on its webchats. *See id.* ¶ 31 (quoting "Intents Analytics" webpage attached at Harper Decl., Ex. D).

First, these allegations lack—again—any connection to Kroger. Ms. Valenzuela does not allege Kroger read this webpage, and an inference that Kroger "should have known" Emplifi violated the law does not suffice. *Cain*, 2018 WL 4657275, at *3.

10
MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Second, the "Intents Analytics" webpage says nothing about Emplifi training anything. It merely explains how Emplifi clients *themselves* can analyze performance "across all of *your* bots," "use this information to get a better idea of the questions that *your* users are asking," and determine "what additional intents it may be helpful to author in *your* bots." Harper Decl., Ex. D. It explains how Emplifi clients can improve the functioning of their own application of the Emplifi webchat tool; it says nothing about Emplifi improving its products generally. And it says nothing whatsoever about sharing information with third parties. Thus, even if Kroger had read this webpage, it would not mean Kroger knew Emplifi used or could use its clients' data for its own benefit. "[W]hile it can reasonably be inferred that [Kroger] knew [Emplifi] would intercept for the benefit of [Kroger], it cannot reasonably be inferred that [Kroger] knew [Emplifi] would intercept for the benefit of a company other than [Kroger]." *James v. Walt Disney Co.*, 2023 WL 7392285, at *9 (N.D. Cal. Nov. 8, 2023) (dismissing claim under Section 631(a)'s fourth clause).

Last, any implication that Kroger must have known Emplifi "trained" its tools using Kroger's webchat data simply because Emplifi "deploy[ed] a chatbot so quickly and cheaply for" Kroger, SAC ¶ 33, not only depends on an implausible inference, but also strays well beyond the pleaded facts which allege nothing about the speed or cost of Kroger's implementing Emplifi software.

### c. Client-Branded Webchat Tool.

Last, Ms. Valenzuela—relying exclusively on the "Emplifi Bot" webpage already considered by the Court, *see* MTD FAC Ord. 7 n.8—implies Kroger knew Emplifi violated Section 631 because Emplifi's webchat tool can be "branded to mimic the look and feel of the customer's own brand." SAC ¶ 27 (citing "Emplifi Bot" webpage attached at Harper Decl., Ex. B); *see id.* ¶ 46 (same allegation).

Again, this conclusion fails because it makes statements at most about the third parties, not Kroger. In any case, Ms. Valenzuela does not allege Kroger's

11
MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

webchat tool is "branded" deceptively. And in the end, the Emplifi webpage Ms. Valenzuela cites says nothing about using or sharing customers' webchat data, and no reasonable inference can connect the dots between this unremarkable allegation and her theory that Kroger knew Emplifi violated the law.

In short, the facts alleged in the SAC do not reasonably support the inference that Kroger had any reason to suspect Emplifi violated Section 631(a), much less actually knew of any violations.

### B. Ms. Valenzuela Does Not Allege Kroger Intended to Aid Emplifi in Violating Section 631.

The Court did not have to consider any additional elements to Ms. Valenzuela's aiding and abetting theory to dismiss the FAC, but even if Ms. Valenzuela pleaded knowledge, her allegations fails to allege that Kroger specifically intended to aid Emplifi's Section 631 violation.

The text of Section 631(a)'s fourth clause supplies a specific intent requirement that goes beyond mere knowledge of a third-party's violation of law. To violate Section 631(a)'s fourth clause a defendant must "aid," "agree with," "employ," or "conspire with" another person to violate Section 631. Cal. Penal Code § 631(a).

In interpreting the statute, these terms should be read together, and the meaning of a more general term is "restricted to those things that are similar to those which are enumerated specifically." *People v. Diaz*, 207 Cal. App. 4th 396, 401 (2012). In this case, "conspire" is a specific term well-understood to "require[] an agreement and specific intent to commit the unlawful acts which are the objects of the conspiracy." *People v. Bowman*, 156 Cal. App. 2d 784, 795 (1958) (discussing mental state for conspiracy). Further, Section 631(a)'s fourth clause requires that a defendant aid, agree with, employ, or conspire with another person specifically "to unlawfully do … any of the acts or things mentioned above." Cal. Penal Code § 631(a). It therefore identifies not just "the act[s]

MOTION TO DISMISS SECOND AMENDED COMPLAINT

12

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

proscribed by law," but also "an additional 'intent to do some further act or achieve some additional consequence,'" making it a specific intent crime. *People v. Koenig*, 58 Cal. App. 5th 771, 796 n.32 (2020) (citation omitted). In any case, to the extent the scienter requirement remains ambiguous, the rule of lenity suggests the Court should adopt the more stringent requirement because Section 631(a) is a criminal statute. *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 n.3 (1979).

Section 631(a)'s fourth clause's specific intent requirement is consistent with the mental state required for aiding and abetting under California criminal law generally, which requires that a defendant "act[] with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense." *People v. Prettyman*, 14 Cal. 4th 248, 259 (1996). Likewise, although derivative liability in tort does not require specific intent, *see In re First All.*, 471 F.3d at 993, it nevertheless arises only if the defendant knew that a tort was being committed "'and acted with the intent of facilitating the commission of that tort,'" *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1145 (N.D. Cal. 2021) (quoting *Gerard v. Ross*, 204 Cal. App. 3d 968, 983 (1988)).

Here, though, Ms. Valenzuela not once offers even a conclusory allegation that Kroger acted with the intent to aid Emplifi's alleged crime. The SAC alleges Kroger "intentionally caused the internet communications … to be recorded," SAC ¶ 47, but this same allegation proved inadequate in the FAC, *see* FAC ¶ 36, and in any case the relevant "intent" question is whether Kroger intended to help Emplifi "commi[t ]the offense" of violating Section 631, *People v. Hardy*, 5 Cal. 5th 56, 96 (2018). Ms. Valenzuela's allegation that the reason "why Defendant engaged Emplifi's service" is that Emplifi used Kroger's webchat data "to perform analytics and train its own chatbot" and "share[] information with third parties such as Meta" is both conclusory and implausible. SAC ¶ 45. That a website owner would pay a vendor to independently benefit from the website's data defies common

13
MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

sense. Ms. Valenzuela does not say why Kroger would enter this counterintuitive business arrangement.

## V.   CONCLUSION

The Court should dismiss Ms. Valenzuela's SAC. Because she has demonstrated her inability to remedy the legal deficiencies identified above, dismissal should be with prejudice.

Dated: May 9, 2024

DAVIS WRIGHT TREMAINE LLP
Jacob M. Harper
James H. Moon
Sancho Accorsi

By: /s/ Jacob M. Harper
Jacob M. Harper

*Attorneys for Defendant The Kroger Co.*

The undersigned, counsel of record for The Kroger Co., certifies that this brief contains 4,406 words, which complies with the word limit set by court order dated September 12, 2022.

14
MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899